COPY

Peter J. McNulty    SBN 89660
MCNULTY LAW FIRM
827 Moraga Dr.
Los Angeles, CA  90049
Telephone: (310) 471-2707
FAX: (310) 472-7014
Email: peter@mcnultylaw.com

*[Additional Counsel on Signature Page]*

FILED

2010 OCT 19  PM 3:07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re UNITED PARCEL SERVICE "AIR-IN-GROUND" MARKETING AND SALES PRACTICES LITIGATION | **MDL No. 2153** |
| | **Case No. 2:10-ml-02153-GW-PJW** |
| | **SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |

THIS DOCUMENT RELATES TO:

2:10-CV-00733-GW-PJW Designer Imports International, Inc. v. United Parcel Service, Inc., et al.

2:10-CV-00734-GW-PJW Pocino Foods Company, et al. v. United Parcel Service, Inc., et al.

2:10-CV-04350-GW-PJW Arapahoe Hyundai, LLC v. United Parcel Service, Inc., et al.

2:10-CV-04352-GW-PJW Owens Financial Group, Inc. v. United Parcel Service, Inc., et al.

**JURY TRIAL DEMANDED**

1. Violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO");

2. Breach of Contract;

3. Fraudulent Inducement;

4. Breach of the Implied Covenant of Good Faith and Fair Dealing; and

5. Unjust Enrichment

Lead Plaintiffs Pocino Foods Company; Designer Imports, International, Inc.; Arapahoe Hyundai, LLC; and Owens Financial Group, Inc. (sometimes hereinafter collectively referred to as **"Plaintiffs"**), by and through their attorneys, bring this action against Defendant United Parcel Service, Inc., a Delaware corporation; Defendant United Parcel Service, Inc., an Ohio corporation; Defendant United Parcel Service General Services Co., a Delaware corporation; and Defendant United Parcel Service Co. d/b/a United Parcel Service Co. (Air), a Delaware corporation (collectively referred to as **"UPS," "Defendant,"** or **"Defendant UPS"**); and Defendants DOES 1 through 10, inclusive (collectively referred to as **"Defendants DOES"**), for violations of the Federal Racketeer Influenced and Corrupt Organizations Act (**"RICO"**), 18 U.S.C. § 1961, *et seq*.; for breach of contract; for fraudulent inducement; for breach of the implied covenant of good faith and fair dealing; and for unjust enrichment, individually and on behalf of all other similarly situated individuals and entities (the **"Class"**).  Plaintiffs assert the claims alleged herein upon knowledge as to their own acts and otherwise upon information and belief as follows:

## I.    INTRODUCTION AND BACKGROUND

1.      This is a civil action seeking monetary damages for UPS's unfair and fraudulent conduct, and UPS's breaches of its agreements with Plaintiffs and the Class.  UPS's misconduct took a variety of forms, but it includes, most significantly: (1) charging Plaintiffs and the Class a surcharge for aviation fuel for shipping packages that UPS knows, in advance, will be delivered only by ground truck ("Fuel Surcharge Claim") and (2) inducing Plaintiffs to purchase and charging them far more money for "air" shipping services that UPS knows, in advance, Plaintiffs do not need and will never receive ("Air Service Claim").  These separate and independent fraudulent charges levied on Plaintiffs and the Class form the basis for this Complaint.  UPS's misrepresentations and material omissions at the time of sale result in the customers paying unjustifiable surcharges for jet fuel that UPS

never uses and two to three times the price needed to ship their packages.

2.      Upon information and belief, UPS misleads Plaintiffs and Class members into purchasing unnecessary and expensive Next Day Air services more than 350,000 times each day.  Also upon information and belief UPS collects more than $5 million per day from the sale of these services, which UPS knows, before it takes Plaintiffs' and the Class member's money, it will never deliver.

3.      Millions of customers a day, including Plaintiffs and other Class members, purchase UPS air services, such as "Next Day Air" and "2nd Day Air," to ship domestic letters, packages, and freight (collectively **"packages"**).

4.      Plaintiffs and Class members select air shipment, and pay UPS the relatively high price for it, reasonably believing that when they purchase Next Day Air and 2nd Day Air services, UPS will provide air shipment within one or two days, respectively.  Plaintiffs and Class members also reasonably believe that they are getting something for their money and that UPS is not charging them for higher priced air services, but then secretly delivering *exactly* what the customer would have received for substantially less money if he had chosen to purchase "Ground" shipping service instead.

5.      However, despite UPS's agreement to provide (and acceptance of payment for) air shipping services (and a surcharge for aviation fuel), each day UPS systematically and secretly substitutes far cheaper *ground* shipment for tens of thousands of packages Plaintiffs and Class members have paid to ship by *air*. UPS's organized and nationwide program for identifying all air shipments that feasibly can be shipped by ground without missing the delivery deadline and rerouting those packages to ground is **known internally at UPS** as the "**Air-In-Ground**" program.  UPS has been using this program to swell its profits at customer expense since 1995.

6.      Because of the time and effort UPS has devoted to orchestrating and perfecting its Air-In-Ground scheme, UPS knows at the moment a customer

contracts to ship a package by air whether UPS will, in actuality, ship that package by ground. Indeed, because there are locations around the country between which UPS has predetermined to ship *all* 2nd Day Air and/or Next Day Air packages by ground, UPS (but not the customer) knows that the air services it sells between these locations do not even exist and that, in truth, ground is the *only* shipping option available.

7. Yet UPS never discloses that Plaintiffs and Class members are paying for air shipping services that are not actually available and that Plaintiffs and Class members will never receive. Instead, UPS tricks Plaintiffs and Class members into believing that the steep premiums they pay for air service are meaningful, by offering multiple options where no options actually exist. UPS also indicates to Plaintiffs and Class members at every turn that they are receiving the air services they selected and paid for. This is all done for the purpose of ensuring that as many customers as possible continue to pay for phantom air shipping services that UPS knows it will never provide.

8. Thus, at the time of sale, UPS knows with certainty and has pre-determined that certain customers' air packages will be delivered by ground. Based on its internal analyses of ground shipping times and its sorting procedures, when a customer asks for air shipment from any location in the country to any other location, UPS knows, in advance, whether that shipment will actually be shipped solely by ground.

9. For many Class members, the time of delivery guarantee is *identical* whether the Class member ships by an "Air" service or by "Ground." For example, a Class member sending a package from San Francisco to Los Angeles on a Monday will get a time of delivery guarantee of "end of day" Wednesday whether he ships by Ground or pays about twice as much for 2nd Day Air. Because the time of delivery guarantee is the same, Class members who choose 2nd Day Air over Ground in this situation can *only* be choosing to pay more because they believe they

will get air shipment, and not ground shipment.  But, based on the Air-In-Ground Program, *all* 2nd Day Air packages from San Francisco to Los Angeles are actually shipped by Ground service, regardless of what service the Class member buys. Unlike the unwitting Class member, UPS knows in advance that the Class member's package will be handled in exactly the same way, that is shipped by Ground, whether the Class member pays double the price for a non-existent "2nd Day Air" service or not.

10.     For other Class members who seek and pay for a time of delivery before the end of the day, UPS knows that the earlier time of delivery promise will be met whether that customer purchases an "Air" service or "Ground" service.  For example, a Class member sending a package from Washington, D.C. to a major office building in Baltimore may be promised a 10:30 AM delivery if he pays $30 for Next Day Air and only an "end of day" delivery if he ships by Ground.  UPS knows in advance of the customer making the purchase, however, that packages from Washington, D.C. to that office building will be delivered before 10:30 AM, regardless of what service the Class member purchases.  That is, whether the class member buys Ground or Next Day Air, he will actually receive Ground service, and the package will arrive at the same time.  UPS keeps the true time of delivery facts, which it has internally, from Class members to trick them into buying much more expensive Next Day Air service that is not needed and that UPS will not provide regardless of the service selected by the Class member.  Indeed, the Class member has no avenue, whether by using the UPS website or otherwise, for figuring out that there is absolutely no reason for him to pay the steep premium for Air shipping to get a delivery time before the end of the day.

11.     Thus, for both of these sets of Class members, UPS knows with certainty, at the time it takes the Class member's money for "Air" shipping services, that the Class member is *literally* paying something for nothing.  UPS will not provide the "Air" shipping service purchased by these Class members; instead,

UPS will provide only "Ground" service.  UPS (but not the Class member) knows that the package will receive identical treatment -- delivery by Ground service at the very same time -- whether the Class member pays for Ground or pays two or three times as much for one of UPS's "Air" services.  UPS (but not the Class member) also knows that no jet fuel will ever be used in the course of the delivery, although a surcharge for jet fuel will be added.

12.     Of course, UPS never informs the Class member that he is paying an unnecessarily high price to deliver his package, that there is no air service available for the shipment he is requesting and, in many cases, that he could obtain the same delivery time by purchasing the far less expensive Ground service.  The UPS documents, including the original shipping document the Class member uses to order his service (the "**Shipping Document**," examples attached as Exhibits 1 and 2), the subsequently provided shipping documents, such as tracking reports and invoices (the "**Subsequent Shipping Documents**," attached as Exhibits 3-29), UPS's online terms, which it calls a Tariff/Terms and Conditions of Service (the "**Website Terms**," attached as Exhibit 30) and its Rate and Service Guide (the "**Guide**," attached as Exhibit 31), repeatedly affirm that customers will get "Air" service and that they will get the service they selected, and not some other service (e.g., Ground) that they could have purchased, but chose not to.

13.     Moreover, apparently recognizing that its Website Terms nowhere permitted UPS to levy a fuel surcharge based on jet fuel for packages that were actually shipped by ground, UPS changed its terms in January 2009 in an unsuccessful attempt to immunize its misconduct.

14.     Under these circumstances, to implement the reasonable expectation of the Plaintiffs (and other Class members), the shipping contracts must be interpreted in favor of the shippers who did not know (and could not have known) of UPS's Air-In-Ground program.

15.     Plaintiffs and Class members reasonably understood and expected that

they would actually receive the "Air" level of service they selected and that it was necessary to pay the much higher price for such service. The Plaintiff shippers also reasonably expected that they would be charged the higher surcharge for aviation fuel <u>only</u> for packages shipped by an "air" level of service. They never suspected, and UPS never informed them, that they were paying substantially higher prices for "Next Day Air," "2nd Day Air," or other "Air" services only to secretly have UPS deliver "Ground" service, which Plaintiffs and the Class could have received for far less money.

16. Plainly, UPS's fraudulent scheme is specifically intended to sell more expensive and wholly unnecessary air services. UPS's deception and silence as to how packages are really handled is intended to (and thousands of times per day actually does) fraudulently induce Class members into purchasing unnecessary and far more expensive air services that they never get. If UPS told Class members the truth at the time of sale, no Class member would pay, for example, $21.00 for a Next Day Air delivery or $14.00 for a 2nd Day Air delivery that he could obtain for $7.00 by Ground. No shipper would have selected and paid for an "Air" level of service if the shipper knew that UPS had predetermined that it would not provide that level of service, and would instead provide the much cheaper "Ground" service. No shipper would pay the much higher surcharges for aviation fuel for shipments sent by ground, if the shipper knew the true facts relating to the Air-In-Ground program.

17. UPS fully understood that its Air-In-Ground scheme could not succeed if shippers knew the truth. For these reasons, UPS concealed these material facts and made it literally impossible for shippers to determine which, if any, air shipments had been shipped by ground. UPS intended to suppress and conceal the true facts regarding the Air-In-Ground program to affirmatively deceive its shippers for the purpose of extracting the much higher prices for "air" level of service and for fuel surcharges for jet fuel. UPS affirmatively knew and intended that its

shippers would be tricked and deceived by the Air-In-Ground program.

18.     UPS's conduct not only breaches its contracts with Plaintiffs and Class members, it also constitutes fraud actionable under Federal law.  This action seeks recovery of damages, going back to 1995, for all persons and entities within the United States (i) who paid a surcharge for aviation fuel that UPS never used to ship their packages; and/or (ii) who paid charges for an air shipment for which UPS substituted ground shipment through the Air-In-Ground program; and (iii) who did not directly pass those charges on for payment by their customers or other third parties.

19.     UPS's Corporate Code of Conduct states that UPS is required "to conduct business fairly, honestly, and ethically."  Its Code of Conduct also states that "[w]e do not misrepresent our services or products in any sales or promotional efforts."  UPS's Code of Conduct further goes on to claim, "We communicate clearly, so that our customers understand the terms of our business relationships, including contracts, performance criteria, schedules, prices, and responsibilities."

20.     Directly contrary to these claims of corporate good citizenship, morality, and clarity, UPS, through the deliberate acts and fraudulent scheme described in this complaint, has intentionally defrauded Class members out of billions of dollars.

## II.     THE FRAUDULENT SURCHARGE FOR AVIATION FUEL

21.     In approximately 2000, UPS began assessing surcharges for aviation fuel for air shipments and surcharges for diesel fuel for ground shipments.  Surcharges for aviation fuel are substantially higher than diesel fuel surcharges.  (*See* Exh. 5 (Delivery Service Invoice for Plaintiff Pocino, showing a 6.3% ground fuel surcharge and 19.5% air fuel surcharge)).  UPS claimed that the surcharges for aviation fuel are a necessary means to compensate UPS for the rising cost of jet fuel.  In fact, UPS has utilized the surcharge for aviation fuel as part of its scheme to fraudulently charge Plaintiffs and the Class additional money for air shipments

that UPS covertly shipped by ground.

22.    UPS assesses surcharges for aviation fuel on Plaintiffs and Class members who contract for air services, including Next Day Air and 2nd Day Air service.  Despite the fact UPS has pre-determined air packages that will be switched to ground shipment, and never ships those air packages by airplane, UPS still collects surcharges for aviation fuel from those Next Day Air and 2nd Day Air customers.  UPS thereby charges Plaintiffs and the Class for the cost of jet fuel that it never uses.

23.    Prior to January 5, 2009, the Website Terms' provision on fuel surcharges read simply, "UPS reserves the right to institute a fuel surcharge on some or all shipments without prior notice.  This surcharge is subject to adjustment monthly.  This surcharge may apply to any domestic or international transportation or other charges, including, but not limited to, any accessorial charge or surcharge.  This surcharge will be applied to such services and for such periods as UPS, in its sole discretion, may determine necessary.  The current fuel surcharge is described at ups.com."  (Exh. 32 at page 31 of 48, section V.F. (UPS Website Terms dated August 4, 2008) ("**Pre-2009 Fuel Surcharge Clause**").  On UPS.com, UPS lists the shipping services to which the diesel fuel surcharge applies (UPS Ground Commercial, UPS Ground Residential, UPS Hundredweight Ground Service, and UPS Standard) and to which the jet fuel surcharge applies (UPS Next Day Air Early A.M., UPS Next Day Air, UPS Next Day Air Saver, UPS 2nd Day Air A.M., UPS 2nd Day Air, UPS 3 Day Select, UPS Worldwide Express Plus, UPS Worldwide Express, UPS Worldwide Saver, and UPS Worldwide Expedited).

24.    UPS's Website Terms do *not* permit UPS to assess surcharges for aviation fuel for packages that UPS elects to ship by ground.  They state that a surcharge for aviation fuel will be added to packages shipped by Next Day Air, 2nd Day Air and other Air services, but they in no way authorize UPS to charge a surcharge for jet fuel when UPS *actually ships* the packages by Ground.  As

specifically provided in the Website Terms, Ground shipments must be subject to the diesel fuel surcharge.  Moreover, nothing in UPS's Pre-2009 Fuel Surcharge Clause provided any notice to Plaintiffs and Class members regarding UPS's scheme to ground-out air service packages while continuing to charge air rates and an additional surcharge based on aviation fuel.

25.     Nor does any language in the description of UPS's fuel surcharge at www.ups.com remotely provide notice of UPS's scheme to charge surcharges for aviation fuel to Plaintiffs and Class members for packages shipped by ground service.  (See Exh. 33 ("Fuel Surcharge" webpage from www.ups.com)).  Moreover, a reasonable shipper viewing the portion of the UPS website specifically labeled "Fuel Surcharge" would see nothing to suggest that he should look elsewhere for evidence of such a scheme.

26.     Since the fuel surcharge purported to reimburse UPS for the cost of fuel expended in transportation, Class members reasonably believed that UPS's diesel fuel surcharge applied to Ground service packages, while UPS's surcharge based on aviation fuel applied to packages transported by air.

27.     UPS recently changed the Fuel Surcharge Clause in a cynical attempt to avoid liability for their fraudulent surcharges.  The January 5, 2009 UPS Website Terms, on page 29 of 48, at section V.F. ("**Post-2009 Fuel Surcharge Clause**") (Exh. 34), added to the old language on fuel surcharges, "Regardless of the mode of transportation used, the effective fuel surcharge for the service selected by the shipper shall apply."  Prior to 2009, no clause suggested in any manner that the fuel surcharge would not directly relate to the method of shipment (*i.e.*, that the diesel fuel surcharge would apply to ground transportation and the jet fuel surcharge to air transportation), which is what reasonable customers would believe and Plaintiffs believed.

28.     The Post-2009 Fuel Surcharge Clause contains the same ambiguities and internal contradictions arising from the "mode of transportation" language that

is discussed at length in Section V.C. below.  Thus, even for shipments made after
the change to the Fuel Surcharge Clause, no reasonable customer would expect to
pay a premium for jet fuel that UPS knows in advance it will never use. In any case,
this change to the Fuel Surcharge Clause was made *after* the huge bulk of
Plaintiffs' and Class members' shipments.  Thus, nothing in the UPS Website
Terms permits UPS to impose a surcharge based on aviation fuel for packages that
use no aviation fuel whatsoever.

29.     UPS applies surcharges for aviation fuel to air shipments that UPS, in
actuality, ships by ground, as another means of protecting its Air-In-Ground
scheme from disclosure.  If UPS did not impose the surcharge for aviation fuel, the
assessment of a ground diesel fuel surcharge for a purported air shipment package
could alert a shipper to the scheme.  The knowing assessment of inapplicable
surcharge for aviation fuel to ground-delivered packages is part of UPS's concerted
effort to perpetuate the Air-In-Ground scheme and to shield it from the public eye.
The surcharge for aviation fuel also is a means to obtain additional, unwarranted
profits at the expense of Plaintiffs and the Class.

30.     The Fuel Surcharge Clause, particularly prior to January, 2009, does
not permit UPS to assess surcharges for aviation fuel for ground shipments.
Moreover, even after UPS modified the language of the Fuel Surcharge Clause in
January 2009 to purport to link the fuel surcharge to the service selected, UPS did
not materially change the language in its website specifically relating to fuel
surcharges.  Thus, UPS's webpage entitled "Fuel Surcharges" conflicts with the
language of the Post-2009 Fuel Surcharge Clause and does not advise the customer
that UPS may charge surcharges for aviation fuel for packages sent by ground.

31.     The inequitable nature of UPS's conduct in assessing fraudulent and
unjustifiable surcharges for aviation fuel on Plaintiffs and Class members is
highlighted by comments UPS has made to the Surface Transportation Board
concerning rail fuel surcharges that were assessed against UPS.  Directly contrary

to its practice of imposing surcharges for aviation fuel as described herein, UPS argued to the Secretary of the Surface Transportation Board in its September 29, 2006 protest letter regarding rail service fuel surcharges that "[f]uel surcharges that are based on a percentage of railroad base rates are inequitable and do not correlate with actual fuel consumption." UPS further urged the Surface Transportation Board "to implement procedures that would promote uniformity, equity, and greater transparency among railroad fuel surcharge practices."

32.    Of course in that instance, UPS was the recipient of the inequitable fuel surcharge, which was disclosed to UPS. Here, Plaintiffs and the Class members are the victims of UPS's inequitable, and undisclosed, surcharge for aviation fuel that is never used. Putting aside the *amount* of fuel actually consumed by UPS in shipping packages for Plaintiffs and the Class, UPS's surcharge for aviation fuel does not even accurately reflect the *type* of fuel being used.

## III.    UPS'S INITIATION OF THE AIR-IN-GROUND SCHEME

33.    UPS developed the Air-In-Ground program around 1995. Prior to the Air-In-Ground program, UPS policy required an air package to be shipped by plane and a ground package to be shipped by ground transportation. The Air-In-Ground program was specifically designed to identify air packages that UPS could transport by ground. The purpose of the Air-In-Ground program is to collect the higher price charged for air transportation, including a surcharge for aviation fuel, while actually providing the much cheaper Ground service.

34.    Prior to implementing the Air-In-Ground program in or around 1995, UPS performed a computer analysis of origin and destination ZIP Codes and the transit time between the various ZIP Codes (**"Time-In-Transit"**). The analysis allowed UPS to determine whether ground transportation could get air packages to their destinations on time. If UPS can timely transport an air package by ground, UPS substitutes ground service for the purchased air service.

35.    The Air-In-Ground program uses specially developed transit-time

tables (**"Sort Charts"**) to change customer shipments from air transportation to ground transportation. A Sort Chart is a list of ZIP Codes that identifies the destinations that can be reached by ground transportation in one or two days from each of UPS's regional Service Centers. Unique Sort Charts are posted at each Service Center. The label on the customer's package provides the destination ZIP Code. The first three digits of the destination ZIP Code are taken into account, and if the destination ZIP Code is on the Sort Chart and the "air" package can arrive on time by ground transportation, UPS will substitute ground service.

36.     The Air-In-Ground program and its Sort Charts were developed by UPS's Industrial Engineering ("IE") Department more than a decade ago. UPS employees, working with senior management, established and set goals concerning the percentage of air shipments that would be eliminated through the Air-In-Ground program in each region of the country. UPS's determined efforts to devise, implement, monitor and improve the Air-In-Ground program demonstrate its premeditated and willful fraud against the Class. Since its inception, UPS's fraudulent Air-In-Ground program has been carried out on a continuous and national basis.

37.     UPS's calculated, nationwide scheme results in automatic and pre-determined rerouting of packages. UPS – but not the customer – possesses all the information needed to conclude which air shipments will be shipped by ground. Although UPS knows, based on ZIP Codes and its Sort Charts, which packages will be shipped by ground transportation when a customer presents a package to UPS, UPS nonetheless continues to offer and charge for air shipping services that it knows will never be provided and that, for all intents and purposes, do not exist.

38.     When a customer contracts to send his package with the selected level of service (e.g., Next Day Air), he does not know that UPS has already pre-determined whether his Next Day Air package will actually be shipped by air or ground. UPS does not tell the customer his air package will be shipped by ground

or that he will be paying a higher price for a level of service he will not receive.

39.     On the contrary, the Shipping Document through which the customer contracts with UPS for air shipment indicates that the service selected (e.g., Next Day Air), will be the service provided (i.e., shipment by air to arrive the next day). (Exhs. 1-2).  With that Shipping Document, Plaintiffs selected the level of service desired (e.g., Next Day Air or 2nd Day Air), and in doing so, reasonably believed that they were purchasing and would receive air shipment with delivery within one or two days, respectively.

40.     Of course, if UPS disclosed its scheme, the customer would not contract for air service, which costs two to three times more than ground, when the customer will receive only ground service, particularly since in many cases the delivery guarantee for air service is exactly the same as for UPS Ground service. Nor would any rational customer agree to pay a surcharge for jet fuel, knowing that no jet fuel would ever be needed.

41.     The contracts between Plaintiffs and UPS consisted of the Shipping Document (examples of which are attached as Exhs. 1 and 2) and, for certain Plaintiffs, the UPS Website Terms and Guide in effect at the time of shipment.

42.     At all relevant times, UPS suppressed and concealed the true facts relating to the Air-In-Ground program.  For example, shippers, including Plaintiffs and Class members, can track a shipment on the UPS website, but the website information does not reveal and is designed to conceal whether the package was actually sent by air or ground.  UPS internet communications, including website information and email communications to shippers and package recipients, fraudulently indicate that packages that were in fact sent by ground received air service.  Similarly, UPS invoices also falsely state that a package was shipped by air when the package was in fact shipped by ground service.  In some instances, UPS also affixes labels to packages which further deceive the shipper into believing that his package will be or has been shipped by air.  UPS employees ignore these

13.

labels for packages that can be shipped by ground.

43.     In contrast, UPS's internal tracking system shows whether a purchased air shipment was sent by air or ground.  This allows UPS to identify and track the number and percentage of air shipments for which UPS deliberately substitutes ground transportation pursuant to the Air-In-Ground program.

44.     Due to UPS's knowing and active concealment, misleading actions, and deliberate misrepresentations relating to the Air-In-Ground program, Plaintiffs and the Class could not have reasonably discovered UPS's wrongful and fraudulent diversion of air shipments to ground transportation.

45.     UPS's deliberate substitution of far less expensive ground shipping services is a remarkably lucrative fraud to increase profits.  UPS's air transportation costs are much higher than its ground transportation costs.  Upon information and belief, the Air-In-Ground program has resulted in false and fraudulent charges to Plaintiffs and the Class that exceed billions of dollars.

46.     These additional fraudulent and unjustifiable charges damaged Plaintiffs and the Class and substantially increased UPS's fraudulently-obtained revenues from its Air-In-Ground scheme.

47.     UPS's actions in substituting ground transportation for packages that UPS had contractually agreed with Plaintiffs and the Class to ship by air transportation, and for which UPS had charged Plaintiffs and the Class air transportation charges, were unconscionable.  No reasonable person would contract with and pay UPS for air shipping services if it were known that UPS never intended to provide air transportation but intended at the time of contracting to transport the packages by ground.

48.     The fundamental artifice and scheme by which UPS achieves this purpose involves misrepresentations by UPS (a) that "air" service is actually available when it is not, (b) that "air" service is necessary to obtain delivery at the desired time when packages sent by ground service will be delivered at the same

time, (c) that UPS has actually provided the "air" level of service when it has not, and (d) that letters may be shipped only by "air" level of service.

49.     First, UPS has predetermined those shipments under the Air-In-Ground program for which UPS will not provide "air" level of service.  Thus, a shipper's "selection" of an "air" level of service for such shipments is completely illusory.  UPS knows with absolute certainty that it is selling the customer a service (e.g., Next Day Air) that does not exist for that shipment and that the customer has selected and paid for a service (Next Day Air) that it will not provide.  For over 350,000 Next Day Air packages per day, there are no choices or options under the Air-In-Ground program.

50.     Second, UPS falsely represents in its Guide (and in the time-in-transit information on the UPS website) that a shipper must select Next Day Air or Next Day Saver level of service to obtain delivery at a desired time before the end of the day.  In fact, in many instances, if the shipper selected ground service, the package would arrive at the same specified time.  This is particularly true in the case of shipment to larger urban areas where UPS typically operates two or three separate deliveries throughout the day.  For example, a package sent from Birmingham to Atlanta by Ground service will arrive at the same or substantially the same time as a package sent by Next Day Air or Next Day Air Saver.  (*See* Exh. 35).  UPS falsely represents in the Guide that such Ground shipments will only arrive by the "end of business day."

51.     Third, the individual shipping transactions also include additional website information and documents created by UPS <u>after</u> the shipper selects an "air" level of service.  These documents are "tracking" reports (Exh. 4), "proof of delivery" reports (Exh. 3), and Delivery Service Invoices ("Invoices") (*see* Exhs. 5-29).  These documents are hereafter collectively referred to as the "Subsequent Shipping Documents."  These Subsequent Shipping Documents each falsely represent that UPS has <u>actually provided</u> the "air" level of service selected by the

shipper.

52.     In UPS's view of the world, it has the right to operate a concealed "bait and switch" scam on Plaintiffs and Class members under the Air-In-Ground program and thereby extract hundreds of millions of dollars.  UPS is wrong.  The UPS Website Terms provide no defense as a matter of law to Plaintiffs' RICO, fraudulent inducement, and breach of contract claims based upon UPS's misleading and deliberately deceptive conduct under the Air-In-Ground program.

## IV.     UPS'S FRAUDULENT AND DECEPTIVE PRACTICES ARE ACTIONABLE UNDER FEDERAL LAWS AGAINST RACKETEERING

53.     UPS's actions in diverting to its Ground service packages that UPS had contractually agreed with Plaintiffs and the Class to ship by an Air service, and for which UPS had charged Plaintiffs and the Class surcharges for aviation fuel, were unconscionable.  No reasonable person would contract with and pay UPS for air transportation and surcharges for aviation fuel if it were known that UPS never intended to provide air transportation (or to use any jet fuel) but intended at the time of contracting to transport the packages by ground.

54.     UPS's conduct with regard to its Air-In-Ground scheme, as described in this complaint, violates the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961, *et. seq.*).  Plaintiffs also specifically allege and describe multiple individual shipping transactions that constitute predicate acts under RICO, a representative sample of which is attached as Appendix A.

55.     The RICO scheme and artifice to defraud Plaintiffs and putative class members is not in any respect limited to the original Shipping Document or Website Terms and Guide (although the Guide contains misrepresentations regarding delivery times).  Rather, Plaintiffs' RICO claims are based upon additional separate and distinct wrongful UPS actions including the following:

**a.**   UPS's undisclosed predetermination that packages shipped between specific zip codes will never receive "air" level of service.

**b.**   Withholding the facts, fully known to UPS, that many packages shipped by an Air service will be handled in precisely the same way and delivered at the same time whether the customer pays for Air service or buys far less expensive Ground service.  Instead of revealing these facts, UPS only tells customers that Ground packages will be delivered by the end of the day, when it often knows with certainty that they will be delivered at the same time as more expensive Air packages.  UPS makes these omissions and misrepresentations to trick customers into paying for Air services they do not need and will never receive.

**c.**   Misrepresentations on the UPS website screens that only "air" level of service is available for delivery of letters.

**d.**   The misrepresentation in "tracking" reports that UPS has provided the selected "air" level of service.

**e.**   The misrepresentation in UPS "proof of delivery" reports that UPS has provided the selected "air" level of service.

**f.**   The misrepresentation in the Invoices which bill the shipper for "air" service not provided.

**g.**   It is impossible for a shipper to determine whether any individual shipment has been changed from the "air" level of service to ground service.

**h.**   It is impossible to determine that UPS has assessed surcharges for aviation fuel for ground shipments.

**i.**   The Subsequent Shipping Documents are intended by UPS to "lull" and deceive shippers.

**56.**   UPS uses deception and false advertising to induce Plaintiffs and Class members to purchase the more expensive air services and to convince Plaintiffs and Class members they have actually received some benefit in exchange for the

SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT - MDL NO. 2153;
CASE NO. 2:10-ml-02153-GW-PJW

premiums paid.  This premium cannot be in exchange for a better delivery guarantee, because in many instances, the delivery guarantees for air services are identical to those for ground service or ground packages will actually arrive at the desired earlier time.

**57.**    Rather than disclosing to Plaintiffs and Class members that they are paying for an air service premium that carries no benefit – i.e., that although they are paying as much as three or four times the Ground service rate, they are receiving Ground service and nothing else – UPS accepts the Plaintiffs' and Class members' packages and payment and silently pockets the extra profit.

**58.**    Regardless of whether the UPS Website Terms permit UPS to change the mode of transportation for certain Class members' packages, UPS's false representations – made to deceive Plaintiffs and Class members into believing they receive some benefit for the air service premiums paid – violate established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

**59.**    UPS's transmission of these false representations through the U.S. Mails and wires constitutes mail and wire fraud, predicate acts under RICO.

### A.    Pattern of Racketeering Activity.

**60.**    UPS and/or Defendants DOES have wrongfully participated in the conduct of an association-in-fact enterprise through a pattern of racketeering activity which has directly injured Plaintiffs and the Class in their business and property in violation of 18 U.S.C. § 1962(c).  UPS sets both the prices and the terms and conditions of sale for air shipping services, as well as manages the conduct of the affiliates in the shipping network, including the Retail Franchises, UPS Alliance Locations, UPS Partners, and the Additional Shipping Outlets, in other ways.

**61.**    The pattern of racketeering activity has been ongoing on a regular and continuous basis for more than ten years, and will continue into the future.

SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT - MDL No. 2153;
CASE No. 2:10-ML-02153-GW-PJW

62.     "Air-In-Ground" is UPS's program of substituting ground service for Plaintiffs' and Class members' air service packages while billing Plaintiffs and Class members for air transportation.  The purpose of the Air-In-Ground program is to collect the higher price charged for air transportation while actually transporting packages more cheaply by ground.

63.     Despite UPS's agreement to provide air shipping services for a fee, UPS deliberately substitutes far less expensive ground shipping services and conceals the same from Plaintiffs and Class members who paid for air shipping.  By selling air transportation to customers and then shipping Plaintiffs' and Class members' packages by ground transportation, UPS has been able to fraudulently and dramatically increase its profits.

### B.    Association-In-Fact Enterprise.

64.     An association-in-fact enterprise exists that includes Defendant UPS, the Retail Franchises, UPS Alliance Locations, UPS Partners, the Additional Shipping Outlets, and Defendants DOES.  The association-in-fact alleged herein constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

65.     The association-in-fact enterprise is a group of separate and distinct entities associated together for the common purpose of shipping packages in the United States through the UPS shipping network.  Many other entities, including affiliates of UPS and other third party entities, are also part of the UPS shipping network.  The enterprise is engaged in, and its activities affect, interstate commerce.

66.     This association-in-fact enterprise constitutes an ongoing organization based upon the continuing contractual and other business relationships between UPS, the UPS Retail Franchises (such as UPS Stores and Mail Boxes, Etc., Inc.), UPS Alliance Locations (such as Office Depot, Inc. and Staples, Inc.), UPS Partners (such as Unishippers), and the Additional Shipping Outlets (such as UPS outlets in convenience stores).  The association-in-fact enterprise has a structure separate and distinct from the pattern of racketeering activity.

SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT - MDL NO. 2153;
CASE NO. 2:10-ML-02153-GW-PJW

67.   UPS and/or Defendants DOES have conducted the affairs of the association-in-fact enterprise through a pattern of racketeering activity as defined in 18 U.S.C. §§ 1961(1) and (5). As stated, UPS sets both the prices and the terms and conditions of sale for air shipping services.  For instance, UPS dictates the rates for 2nd Day Air and Next Day Air services, as well as the fuel surcharges for air and ground services.  On information and belief, UPS also manages the conduct of the affiliates in the shipping network by training affiliates' employees on the use of the UPS package tracking system and payment system and on UPS policies regarding package shipments; maintaining and updating the package tracking system used by affiliates; maintaining and updating the payment system used by affiliates; and coordinating with affiliate employees regarding package pick-up.  Further, UPS establishes the rules and guidelines regarding the eligibility of packages received by the affiliates for given levels of service.

### C.   Predicate Acts of Mail and/or Wire Fraud.

68.   UPS and/or Defendants DOES participated in and/or controlled the association-in-fact enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  Acts of mail fraud and/or wire fraud are committed each time Defendant UPS sends Plaintiffs and the Class an Invoice for payment of charges for air shipments and surcharges for aviation fuel on shipments for which UPS substitutes ground service.  Acts of wire fraud are also committed each time UPS uses the internet (for instance UPS's website or email) to communicate misrepresentations to Plaintiffs and the Class, that UPS will provide an "air" level of service, that "air" level of service is necessary to obtain necessary delivery times, that only "air" level of service is available for letters, that UPS has actually provided "air" level of service, and the other misrepresentations, half-truths, and concealment of material facts alleged herein.  These acts are indictable under 18 U.S.C. § 1341 (mail fraud) and/or 18 U.S.C. § 1343 (wire fraud).  UPS and/or Defendants DOES has committed these predicate acts of mail fraud and/or wire

fraud with a specific intent to defraud and in furtherance of the scheme to defraud (the Air-In-Ground Program) frequently and continuously for more than ten years. Specific incidents of mail and/or wire fraud, including the dates and amounts of fraudulent billings, are set forth in Appendix A.

69.  UPS transmitted the fraudulent Invoices for air shipments wrongfully changed from the selected "air" level of service to ground service to Plaintiffs and to the Class on hundreds of thousands of occasions through the U.S. Mails and/or transmission via wire facilities (*i.e.*, by facsimile or electronically) in violation of 18 U.S.C. §§ 1341 and 1343.

70.  UPS and/or Defendants DOES have also fraudulently used the U.S. Mails and wires in violation of 18 U.S.C. §§ 1341 and 1343 to facilitate the Air-In-Ground program in the following additional ways: (a) for oral and written communications between customers and UPS; (b) for internal oral and written communications between UPS officers and employees; (c) for oral and written communications with Retail Franchises, UPS Alliance Locations, UPS Partners, and Additional Shipping Outlets; and (d) to receive payment from Plaintiffs and the Class for the wrongful and fraudulent UPS charges.  The specific number of predicate acts cannot be alleged fully without access to UPS's books and records but is estimated to be hundreds of thousands of occurrences.

71.  UPS's wire fraud and mail fraud has been in furtherance of the UPS scheme or artifice to defraud or obtain money by means of false or fraudulent pretenses concerning the practice of substituting ground service for air packages and charging the customer for air shipment (the Air-In-Ground program).

72.  UPS and/or Defendants DOES have utilized said wire fraud and mail fraud to conduct an ongoing pattern of racketeering.  The racketeering acts are directly related to each other and have a common purpose.  The wrongful conduct of changing air packages from the selected "air" level of service to ground service and charging the customer for "air" level of service (the Air-In-Ground program)

has been ongoing and continuous since 1995 and will continue in the future, absent relief in this action.

73.     UPS could not have carried out its Air-In-Ground program without conducting the same fraudulent activities through all branches of its shipping network (the association-in-fact enterprise).  Had UPS not implemented the Air-In-Ground program for all shipments, regardless of how they were commissioned, the fraud it was perpetrating would have come to light.  Therefore, UPS's fraud through the association-in-fact enterprise was a necessary part of the Air-In-Ground program as a whole.

## V.     UPS BREACHED ITS CONTRACTS WITH PLAINTIFFS AND THE CLASS MEMBERS

### A.     How Plaintiffs and Class Members Ship Their UPS Packages.

74.     The shipping documents that Plaintiffs and Class members see and rely upon when contracting with UPS clearly indicate, through the very names of each of the services UPS sells, that the shipment will be by "air."  UPS offers to their customers a variety of services, including Next Day Air Early A.M., Next Day Air, Next Day Air Saver, 2nd Day Air A.M., 2nd Day Air, 3 Day Select, and Ground.  Exhibit 1 is an example of the UPS shipping form for Next Day Air (hereinafter "Shipping Document") (*see also* Exhibit 2, an example of the UPS shipping form for 2nd Day Air).

Exhibit 1

**75.**   Plaintiffs and the Class reasonably believed their packages would be shipped by air because the plain and ordinary meaning of Next Day Air service is "shipment by air, delivered by the following day" and the plain and ordinary meaning of 2nd Day Air service is "shipment by air, delivered within two days." By contrast, the plain and ordinary meaning of Ground service is "ground shipment," which is not what Plaintiffs and the Class purchased and not what they expected to receive.  Nothing on the Shipping Document the customer completes to purchase UPS services indicates that UPS is not agreeing to deliver according to the plain English meaning of the service the shipper selects.

**76.**   Because the purchased services specify "air," they are also not at all ambiguous as to how delivery would be accomplished, in the way that a service such as 3 Day Select is.  If UPS had intended to make no representation as to how

23.

shipment would be handled, it could have simply called its services "Next Day Shipping" and "2nd Day Shipping."  On information and belief, UPS opted not to do this because it (accurately) believed that Plaintiffs and Class members would believe they were getting air service if "Air" was in the name of the service and, consequently, would be more willing to pay a premium price.

77.   To select Next Day Air service, the shipper simply fills out the Next Day Air shipping form (*See* Exh. 1), or selects Next Day Air shipping online or at a shipping outlet.  Whatever manner of selecting the service the customer uses, the Shipping Document, as well as UPS's Website Terms and Guide, indicate that "the service selected by the shipper" (and not some other service) will be delivered.

78.   UPS charges a steep premium for air shipping services that it does not provide and never had any intention of providing.  The Class typically pays UPS two to three times more to ship with UPS by air than to ship with UPS by ground. In 2008, UPS's average revenue per piece for Next Day Air was $21.95.  Whereas in 2008, UPS's average revenue per piece for Ground was $7.42.  Thus, when an air package is instead sent by ground shipping ("grounded out" in UPS internal parlance), UPS simply pockets the substantial difference in price between the service it charges for and the service it actually delivers.

79.   UPS may claim that its customers only care about whether their packages arrive on time, and, therefore, customers are unharmed when ground services are substituted for air services.  But UPS ignores the undeniable fact that Plaintiffs and Class members also care about *price*.  It is axiomatic that no shipper wants to, or would ever knowingly agree to, pay two or three times more to get the same service under a different name.

80.   Though UPS, in some (but not all) contexts, places a trademark sign next to each service name, UPS nowhere indicates to Plaintiffs and Class members that the names of UPS's services do not accurately describe the services, and nowhere does UPS define the products it sells as meaning anything other than the

plain and ordinary meaning of the words.

### B.   UPS Does Not Sell a Mere Time of Delivery Promise.

#### (1)   Plaintiffs and Class Members Were Entitled to Receive the Service They Purchased.

81.   Plaintiffs and Class members buy a level of service that expressly includes the method of shipping in the name of the service itself.  The name of the service is, therefore, also a description of what exactly Plaintiffs and Class members are buying and why they should choose this service over the other options.  UPS's agreement to provide its 2nd Day Air service, for example, was understood by Plaintiffs and the Class to be an agreement to ship packages by air for delivery within the next two days.  UPS cannot claim to be selling *only* a time of delivery promise, because it did not sell to Plaintiffs and Class members only "2nd Day Shipping."

82.   UPS cannot substitute a different service, that it offers at a lower price, and claim to have performed the contract Plaintiffs and Class members agreed to.  Therefore, in every case where Plaintiffs and Class members purchased an "Air," but only received "Ground," UPS has fundamentally breached its contract with the shipper.

#### (2)   UPS Cannot Claim Plaintiffs and Class Members Knowingly Paid More For An Earlier Time of Delivery Promise, Because The Time of Delivery Promise Was Often Identical.

83.   For many Plaintiffs and Class members, the air shipping premium that UPS charges cannot be attributed to any earlier time-of-delivery guarantee because there is no earlier time of delivery guarantee given for the air services as opposed to the much less expensive ground service.

84.   For instance, for many Class members that paid for "Next Day Air Saver" and for all Class members that paid for "2nd Day Air," in the cases in which

SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT - MDL NO. 2153;
CASE NO. 2:10-ML-02153-GW-PJW

their packages were shipped by ground, they would have received *exactly the same
delivery guarantee and package handling* whether they paid a premium for non-
existent air services or bought Ground service from the outset.

85.     Exhibits 36 and 37 are examples of UPS Time and Cost summaries for
shipment from San Francisco to Los Angeles and from San Francisco to San Jose,
respectively.

86.     Exhibit 36 shows that, for a package sent from San Francisco to Los
Angeles, UPS's delivery guarantee is *exactly the same* for 2nd Day Air and Ground
services, while the price for the air service is more than twice as high.  Below is an
excerpt of Exhibit 36.

| UPS 2nd Day Air® | 5:00 P.M. Tuesday October 19, 2010 | By End of Day, Thursday October 21, 2010 | 27.70 USD[*] |
|---|---|---|---|
| Days In Transit: 2 | Schedule by 4:30 P.M. Tuesday October 19, 2010 | | Billable Weight: 10.0 lbs. |
| UPS Ground | 5:00 P.M. Tuesday October 19, 2010 | By End of Day, Thursday October 21, 2010 | 11.28 USD[*] |
| Days In Transit: 2 | Schedule by 4:30 P.M. Tuesday October 19, 2010 | | Billable Weight: 10.0 lbs. |

87.     Similarly, Exhibit 37 shows that, for a package sent from San
Francisco to a residential address in San Jose, UPS's delivery guarantee is exactly
the same for Next Day Air Saver and Ground services, while the price for the air
service is nearly three times as high. Below is an excerpt of Exhibit 37.

| UPS Next Day Air Saver® | 5:00 P.M. Tuesday October 19, 2010 | By End of Day, Wednesday October 20, 2010 | 33.59 USD[*] |
|---|---|---|---|
| Days In Transit: 1 | Schedule by 4:30 P.M. Tuesday October 19, 2010 | | Billable Weight: 10.0 lbs. |
| UPS Ground | 5:00 P.M. Tuesday October 19, 2010 | By End of Day, Wednesday October 20, 2010 | 12.22 USD[*] |
| Days In Transit: 1 | Schedule by 4:30 P.M. Tuesday October 19, 2010 | | Billable Weight: 10.0 lbs. |

**88.**    Plaintiffs and Class members, seeing that air services cost two or three times as much as Ground service for exactly the same delivery guarantee, reasonably believed that the premium they pay for air service must be in exchange for actual delivery by air.  Customers choosing to pay more for air service, rather than purchasing ground service with the same guarantee, might reasonably believe that air service is associated with better package handling, that air is safer than surface transportation, or that any number of benefits might accrue to air service over ground service.

**89.**    But no matter what the Plaintiffs' and Class members' reasons for choosing to pay a premium for air, it is undeniable that Plaintiffs and Class members do not think they are paying the premium for a better time of delivery promise, because the time of delivery promise is exactly the same.  The only difference between the cheaper and more expensive option is the clear indication that the more expensive option will be a different service.  In truth, however, because of the Air-In-Ground program, there is no different service.  The package shipped by 2nd Day Air from San Francisco to Los Angeles is delivered at the same time and in exactly the same manner *by Ground*, whether the Class member pays extra money for the false promise of "air" or not.

> **(3)**    Other Class Members Were Misled Into Believing Air Services Were Necessary To Get An Earlier Time of Delivery, When UPS Knew In Advance That They Were Not Necessary.

**90.**    In addition to the group of Class members described above, who get the same time of delivery guarantee, other Class members who sought and paid for a time of delivery before the end of the day were given *different* time of delivery guarantees for Air services than for Ground services, even though UPS knew that their packages would be handled in the same way and arrive at the same time regardless of what the Customer bought.

91.     UPS intentionally withholds from Plaintiffs and Class members the true facts that it knows about its Ground shipping service.  On information and belief, for many destinations around the country, UPS knows that Ground packages sent from nearby locations will be handled *in exactly the same way* and *arrive at exactly the same time* as Next Day Air or Next Day Air Saver packages.  Despite UPS's knowledge of these facts, the UPS website and Guide misleadingly suggest that Plaintiffs and Class members have to purchase the far more expensive Air services to ensure that packages will be delivered before the end of the day (for example, at 10:30 A.M. for Next Day Air).  This induces Plaintiffs and Class members to buy the more expensive services, when Plaintiffs and Class members would otherwise select Ground if they had all the facts.  Of course, because of the Air-In-Ground program, UPS knows that all such Class members will get Ground, whether they pay about three times as much for Air or not.

92.     UPS withholds this vital information from Plaintiffs and Class members for the express purpose of fraudulently inducing them into buying unnecessary "Air" services, despite UPS's foreknowledge that it will deliver "Ground" service, and its knowledge that the package will arrive at the very same time whether the customer pays for Ground or pays three times as much for Next Day Air.

(4)     Plaintiffs and Class Members Were Damaged By UPS's Breaches of Its Contracts.

93.     No Class member would willingly pay two or three times as much for an Air service knowing that UPS intends to provide exactly the same service he would get by purchasing Ground.  Consequently, such a Class member is duped into buying Air by the falsehood of two levels of service being offered at all.  UPS knows that, despite what it offers for sale, only Ground service is actually available to a customer shipping between two of these pre-determined locations.  The Class member is literally paying a premium for nothing.

94.     Again, as only one example, as a result of its Air-In-Ground scheme, UPS knows, in advance of making the sale, that the package of the Class member who purchases 2nd Day Air from San Francisco to Los Angeles will receive exactly the same treatment – including the same delivery guarantee – as the Class member who purchases Ground.  Nonetheless, it fraudulently sells these non-existent air services and collects the hefty premiums associated with services that it knows will never be rendered and which are not even available between those two locations.

95.     UPS was careful to hide the truth from Plaintiffs and Class members and never disclosed that it is selling two identical products for two very different prices.  UPS's reasons for perpetrating this fraud are obvious.  If Class members knew the facts, no rational shipper would ever pay for Air services when Ground shipping would produce the same results.  But, as a result of UPS's deception, every day tens of thousands of Class members continue to pay an unjustifiable premium for air service, and continue to receive ground service.

### C.     The UPS Website Terms.

96.     Some, but not all, UPS Shipping Documents reference UPS's Website Terms.  Though UPS refers to its Website Terms as a tariff, that document is not a legally filed tariff.  Rather, the UPS Website Terms are a contract of adhesion (to the extent they form part of the contract at all), drafted and imposed by UPS.

97.     The UPS Website Terms are available only through UPS's website.  To review the Website Terms, a customer must navigate to the UPS website (www.ups.com) and then locate and click on a link to the UPS Website Terms.  For instance, scrolling down to the very bottom of the webpage brings into view a list of links, under the heading "Other," that includes "UPS Tariff/Terms and Conditions of Service" between "Trademarks" and "UPS London 2012 Sponsorship."  Clicking that link opens a pop-up window, which in turn contains a link for downloading the UPS Website Terms.  Clicking on the "Download" link causes the UPS Website Terms to download and open as an Adobe .pdf file.

98.     The Website Terms in no way disclose or authorize UPS's Air-In-Ground scheme.  Instead of informing Plaintiffs and Class members that UPS has no air service between certain locations, the Website Terms only state, confusingly, that UPS reserves the right to use "any mode of transportation" to provide "the service selected by the shipper."  In particular, on page 26 of the 40-page .pdf, Section 36, entitled "UPS Rates," (which UPS referred to as the "Shipping Mode Clause") of the September 21, 2010 UPS Website Terms provides:

> UPS reserves the right in its sole discretion to use any mode of transportation whatsoever to provide the service selected by the shipper. Regardless of the mode of transportation used, the effective UPS Rates for the service selected by the shipper shall apply. If, however, a shipper selects a UPS service to a destination for which only a higher level of service is available, UPS will substitute the next higher level of available service and will charge the corresponding rate for the substituted service.

("**Section 36**").

99.     UPS Website Terms prior to 2002 did not contain this provision, although UPS implemented the Air-In-Ground program in 1995.  For instance, the September 24, 2001 UPS Website Terms, excerpt attached hereto as Exhibit 38, contained no provision like the one above.  Therefore, this provision is plainly not part of the contract between UPS and Plaintiffs (or any Class members) as to packages shipped before 2002.

100.     Plaintiff Owens established its UPS account on February 5, 2001.  Plaintiffs Designer and Pocino established their accounts with UPS in or before 2000.  Plaintiffs Owens, Designer and Pocino do not currently maintain invoices and other records relating to UPS shipments before January 7, 2002.  However, Plaintiffs Owens, Pocino, and Designer allege, on information and belief, that they paid for many UPS shipments subject to the Air-In-Ground program prior to January 7, 2002.  UPS is liable for wrongful charges to these Plaintiffs for such shipments for the reason alleged herein.  These Plaintiffs require discovery from

SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT - MDL NO. 2153;
CASE NO. 2:10-ML-02153-GW-PJW

UPS to more specifically allege such additional shipping transactions.

101.    Additionally, Class members who access UPS shipping services through methods such as through a UPS Store or UPS Retail Outlet do not have access to the Website Terms at the time of shipment.  Therefore, the UPS Website Terms are also not adequately incorporated by reference into the shipping contracts between UPS and the In-Store Shipper subclass.

102.    But even for those shippers for whom Section 36 is even arguably part of the contract with UPS, it does not excuse the Air-In-Ground scheme.  In Section 36, UPS clearly states that it will "provide the service selected by the shipper."  For example, if the customer selects Next Day Air service, UPS must provide Next Day Air service, not 2nd Day Air service, 3 Day Select service, or Ground service. Plaintiffs and Class members reasonably believe that when the shipper selects Next Day Air, UPS must provide air shipment within the next day.  If UPS, in fact, ships the package by ground, it has provided Ground service instead of the "service selected by the shipper" and has, therefore, breached its contract with the shipper. Section 36 plainly *does not* permit UPS to substitute a different service for the one the shipper selects.

103.    A reasonable customer reviewing UPS's reservation of the right to provide "any mode of transportation whatsoever to provide the service selected by the shipper" would likely be confused.  On the one hand, UPS, by this very clause must "provide the service selected by the shipper."  On the other hand, UPS states that it may "use any mode of transportation" to provide this air shipment.  Not knowing what shipment methods UPS uses, a reasonable customer might understand this clause to mean that UPS could use its own cargo plane to deliver the shipment, or might ship the package on another type of plane.  Similarly, the reasonable customer could infer that this clause only means that UPS reserves the right to determine in its judgment whether to send Ground packages by train, truck or some other form of ground transportation.

104.   A reasonable customer might also understand the clause to apply only to those levels of service sold by UPS, of which there are several, that are not expressly designated as either air or ground shipping.  Under this clause, in the case of UPS 3 Day Select service, UPS could use a truck, train, plane or ship to transport the package, while still providing the service selected, as long as the package was delivered within three days.  A customer could reasonably believe this provision applies to those services where the method of delivery is unspecified, and no others.

105.   But a reasonable customer clearly would not believe, and Plaintiffs themselves never thought, that UPS would sell Next Day Air or 2nd Day Air service, guarantee that such a service will be provided, but then put the package on a truck, thereby rendering a different service.  As discussed in the next section, a reasonable customer also would not believe UPS would add a surcharge for aviation fuel, when, as is the reality, UPS knows in advance of the sale that it will ship the package by ground.  Plaintiffs and Class members reasonably expect that when they pay a premium for a service, they are actually receiving some premium service in return.

### D.   UPS's Rate and Service Guide.

106.   UPS explicitly alleges that the Guide is part of the shipping contract between UPS and the shipper.  UPS Memorandum at 4-7 (Doc. 20).  UPS alleges that:  "As detailed in the Guide, UPS offers a spectrum of domestic shipping services, from same day delivery to delivery within five days ("UPS Ground")."  The Guides attached to the Rogers affidavit (Doc. 22) each contain a minimum of 22 pages describing the various levels of service (and related prices) in great detail.

107.   The price that UPS customers, including Plaintiffs and Class members, pay for an individual shipping transaction depends upon the level of service selected by the shipper and the information in the Guide.  The Guide describes the several different levels of available "Air" service.  Each specifies a time of delivery depending upon the zip codes of the points of origin and destination.

**108.**   UPS specifically advises its customers to review the various levels of service in the Guide and "from this array of services… determine the service that best meets your needs."  The Guide falsely represents that a Next Day Air level of service is necessary to obtain delivery before the end of the next business day.  In fact, many packages <u>originally</u> sent by ground will arrive at the same time.

**109.**   These levels of service are not mere "labels" or "headings" but explicitly describe the services <u>from which the shipper should select the service that best meets the shipper's needs</u>.  UPS utilizes the Guide precisely to induce shippers to unnecessarily pay the much higher price for "air" level of service to achieve a desired delivery time.

**110.**   The information in the Guide about levels of service is inconsistent with the UPS predetermination that it will never provide the "air" level of service for the shipments in issue.

**111.**   UPS cannot hide from its admission that the levels of "air" service are an integral part of its contractual commitment.  Nor can UPS credibly contend that Plaintiffs and Class members care nothing about price but rather only about delivery times.  That proposition crumbles in the face of the reality that Plaintiffs and Class members are not paying prices necessary to obtain desired delivery times.  Indeed, in many cases the delivery times offered to Plaintiffs and Class members for Ground and Air service are exactly the same.  Also, through misrepresentation in its Guide and website, UPS has an elaborate scheme and artifice to induce other Class members to pay unnecessary prices for unnecessary levels of "air" service and to cheat Plaintiffs and Class members into paying much higher surcharges for aviation fuel for ground delivery.

## VI.   JURISDICTION AND VENUE

**112.**   This action asserts claims for violations of the Racketeer Influenced and Corrupt Organizations Act (**"RICO"**), 18 U.S.C. § 1961, *et seq.*, for breach of contract, for fraudulent inducement, for breach of the implied covenant of good

faith and fair dealing, and for unjust enrichment.  Pursuant to 28 U.S.C. § 1332, as
amended by the Class Action Fairness Act of 2005, this Court has subject matter
jurisdiction over this nationwide class action because the matter in controversy
exceeds $5,000,000, exclusive of interest and costs, and is a class action in which a
member of the Class of plaintiffs is a citizen of a state different from UPS.  *See* 28
U.S.C. § 1332(d)(2)(A).  This Court has subject matter jurisdiction over Counts I-V
of this Complaint pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §§ 1964(a) and (c) as
a federal question arising under RICO.  This Court has subject matter jurisdiction
over Counts VI-XIII of this Complaint pursuant to 28 U.S.C. § 1367.

**113.**   This Court has personal jurisdiction over UPS under applicable long-
arm statutes.  UPS is a person within the context of those statutes that directly or
through its agents conducts substantial, continuous, and systematic economic
activities in California.  Venue is proper in this district pursuant to 28 U.S.C. §
1391, because a substantial part of the events or omissions giving rise to Plaintiffs'
claims occurred in this district, UPS has agents and transacts substantial business in
this district, and many members of the Class reside or do business in this district.

**VII.   THE PARTIES**

**114.   Plaintiff Pocino Foods Company** ("Pocino") is incorporated under
the laws of the state of California and has a principal place of business in City of
Industry, California.  Pocino is a citizen of California.  Pocino is a family-owned
food production company.

**115.   Plaintiff Designer Imports, International, Inc.** ("Designer Imports")
is a corporation incorporated under the laws of the state of California and has a
principal place of business in Los Angeles, California.  Designer Imports is a
citizen of California.  Designer Imports is engaged in the manufacture of furniture
for hotels and other commercial users.

**116.   Plaintiff Arapahoe Hyundai, LLC** ("Arapahoe Hyundai") is a
limited liability company organized under the laws of the state of Colorado with its

principal place of business in Centennial, Colorado.  Arapahoe Hyundai is a citizen
of Colorado.  Arapahoe Hyundai is a full-service car dealership.  Arapahoe
Hyundai regularly ships auto parts to other dealerships and to collision repair
centers.

117.   **Plaintiff Owens Financial Group, Inc.** ("Owens") is a corporation
incorporated under the laws of the state of Georgia and has a principal place of
business in Rome, Georgia.  Owens is a citizen of Georgia.  Owens is engaged in
the business of providing financial consulting services.  Owens regularly ships
letters to its clients by UPS.  In addition, Owens regularly receives letters from its
clients shipped by UPS and billed to Owens's UPS account.

118.   **Defendant United Parcel Service, Inc.** is a corporation incorporated
under the laws of the state of Delaware with its principal place of business at 55
Glenlake Parkway, N.E., Atlanta, Georgia 30328.  The registered agent is
Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington,
Delaware 19808.

119.   **Defendant United Parcel Service, Inc.** is a corporation incorporated
under the laws of the state of Ohio with its principal place of business at 55
Glenlake Parkway, N.E., Atlanta, Georgia 30328.  The registered agent is
Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, 2730
Gateway Oaks Drive, Suite 100, Sacramento, California 95833.

120.   **Defendant United Parcel Service General Services Co.** is a
corporation incorporated under the laws of the state of Delaware with its principal
place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328.  The
registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating
Service, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.

121.   **Defendant United Parcel Service Co. d/b/a United Parcel Service
Co. (Air)** is a corporation incorporated under the laws of the state of Delaware with
its principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia

30328.  The registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.

122.   In 1907, Jim Casey started UPS's predecessor company, American Messenger Company, in Seattle, Washington.  In 1919, the company adopted its present name – United Parcel Service.  By 1993, UPS was delivering 11.5 million packages and documents per day.  The huge volume of packages required UPS to develop new technology.  In 1992, UPS developed the handheld Delivery Information Acquisition Device ("DIAD").  This device allowed electronic tracking of packages.  In 1995, UPS's website, UPS.com, enabled customers to track shipment of their packages.  UPS proudly claims that "[t]echnology is the backbone of everything we do at UPS."

123.   UPS holds itself out as the "largest package delivery company in the world, in terms of both revenue and volume."  UPS reports it serves 1.8 million pick-up customers and 6.1 million delivery customers daily.  In 2008, UPS delivered an average of 15.5 million pieces per day worldwide, for a total of 3.92 billion packages that year.  Total revenue in 2008 was $51.5 billion.  UPS operates a ground fleet of approximately 107,000 vehicles, which reach all business and residential ZIP Codes in the contiguous United States.  UPS also operates a fleet of approximately 570 aircraft.

124.   For the year ending December 31, 2008, UPS's revenue for Next Day Air was $6,559,000,000.  In 2008, UPS's average daily package volume for Next Day Air was 1,186,000 packages per day.  In 2008, UPS's average revenue per piece for Next Day Air was $21.95.

125.   Compared to air shipment, ground shipment constitutes a materially different level of service.  Charges for Next Day Air and 2nd Day Air are substantially more expensive than charges for ground shipment.  The price to ship a package between two locations by air can be two to three times the price of sending

the same package by ground.  For the year ending December 31, 2008, UPS's revenue for Ground was $21,394,000,000.  In 2008, UPS's average daily package volume for Ground was 11,443,000 packages per day.  In 2008, UPS's average revenue per piece for Ground was $7.42.

**126.**   UPS's U.S. domestic package business consists of air and ground shipment of small packages – up to 150 pounds in weight – and letters to and from all 50 states.  The domestic package business is built on an integrated air and ground pick-up and delivery network.  All packages – domestic or international, commercial or residential, air or ground – are processed through one integrated network.

**127.**   UPS has direct pickup at customer locations, "pick up" mailbox locations, and also locations known as "UPS Stores."  After shippers turn over their packages, they are transported by ground to the nearest UPS Regional Service Center ("**Service Center**").  The Service Centers then sort the packages for air shipment or ground shipment and send them along to their next destination.

**128.**   Prior to 2001, many of the UPS Stores were owned and operated by independent third party franchisees as part of the UPS shipping network.

**129.**   In 2001, UPS acquired Mail Boxes Etc., Inc., a major franchisor of retail shipping locations.  Many of these franchisee locations were then re-branded as additional UPS Stores.  Other locations continued to operate under the name of Mail Boxes Etc., Inc.  The UPS and Mail Boxes Etc., Inc. stores, totaling more than 4,400, are independently owned and operated by third party franchisees as part of the UPS network.  These locations are hereinafter referred to as the "Retail Franchises."

**130.**   In addition to the Retail Franchises, UPS has entered into business and contractual relationships with Office Depot, Inc. and Staples, Inc. to provide additional UPS locations.  UPS has approximately 1,200 locations in Office Depot stores and 1,500 locations in Staples stores in the United States.  These locations

37.

are hereinafter referred to as the "UPS Alliance Locations."

131.    UPS also franchises thousands of other outlets in locations such as convenience stores and grocery stores.  These locations operate as additional independent franchisees hereinafter referred to as the "Additional Shipping Outlets."

132.    UPS also associates with entities or organizations such as Unishippers Global Logistics, LLC ("Unishippers").  Unishippers describes itself as "partners with carriers like UPS" to handle customers' shipping needs.  Unishippers operates as an administrative and billing intermediary for customers shipping by UPS.

133.    Defendant United Parcel Service, Inc., a Delaware corporation, is the parent UPS corporate entity (**"Parent UPS"**). Parent UPS and its defendant subsidiaries effectively conduct business collectively as one integrated unit known as UPS.  UPS's business activities and operations are managed and controlled from Parent UPS's principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328.  Substantially all the administrative and operational decisions are made by the officers, directors, and employees located at UPS's principal place of business in Atlanta, Georgia.  Parent UPS lists its principal place of business as 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328.  All four entities identified as Defendants in this action have registered the same principal place of business in Atlanta, Georgia. Specifically, the Air-In-Ground scheme was created and implemented by Parent UPS.  At all material times, Parent UPS has managed, directed, controlled, and ratified all material and substantive aspects of the Air-In-Ground scheme on a daily and ongoing basis.  Plaintiffs allege herein multiple specific examples of racketeering activities of wire and mail fraud, for which Parent UPS is directly responsible and liable.  Subject to Parent UPS's direction and control, the Air-In-Ground scheme represents the collective actions of the UPS Defendants.  The specific involvement of the subsidiary UPS Defendants in the Air-In-Ground scheme is uniquely within the knowledge of the UPS organization.

Plaintiffs allege in detail the specific circumstances constituting the overall fraudulent Air-In-Ground scheme.

134.   The true names and capacities, whether individual, corporate, associate, or otherwise, of **Defendants DOES 1 through 10**, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiffs are informed and believe, and based thereon allege, that each such "DOE" defendant is responsible in some manner for the events and transactions alleged herein. Plaintiffs will amend this complaint to state the true names and capacities of said defendants when the same has been ascertained.

135.   Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants DOES is now and has been at all times herein mentioned, the agent, servant, employee, partner, associate, joint venturer, co-participant and/or principal of or with each of the remaining defendants, and that each of the Defendants DOES has been, at all times mentioned herein, acting within the scope of such relationship and with the full knowledge, consent, authority, ratification, and/or permission of each of the remaining defendants.

136.   Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants DOES took part in devising the Air-In-Ground program; took steps to sustain the Air-In-Ground program, including but not limited to restricting the dissemination of information about the program; ensured that the Air-In-Ground program was enforced; and/or were otherwise complicit in the creation or execution of the Air-In-Ground program.

## VIII.  CLASS ALLEGATIONS

137.   Pursuant to F.R.C.P. 23(a) and 23(b)(3), Plaintiffs bring this action on behalf of themselves and a class of all shippers who paid UPS for an air shipment that UPS redirected to ground transportation under its Air-In-Ground program (the **"Class"**).  The Class consists of all persons and entities within the United States (i)

1   who paid charges directly to UPS or paid a third party for an air shipment

2   (including, in some cases, a surcharge for aviation fuel); (ii) for a package for

3   which UPS substituted ground shipment for air shipment through the Air-In-

4   Ground program, and (iii) who did not pass those charges on for payment by their

5   customers or other third parties.

6        138.   Within the Class are three subclasses: the **"Direct Shipper"** subclass;

7   the **"Indirect Shipper"** subclass; and the **"In-Store Shipper"** subclass.  The Direct

8   Shipper subclass consists of those members of the Class who paid charges directly

9   to UPS for an air shipment (including, in some cases, a surcharge for aviation fuel)

10  for a package for which UPS substituted ground shipment.

11       139.   The Indirect Shipper subclass consists of those members of the Class

12  who paid charges to a third party for a UPS air shipment (including, in some cases,

13  a surcharge for aviation fuel) for a package which UPS shipped by ground. The

14  Indirect Shippers were damaged by the Air-In-Ground program through a common

15  shipping arrangement in which the Indirect Shippers received or sent UPS air

16  shipment packages through vendors or other third party entities (i.e., the Pass-

17  Through Shippers or UPS Partners), whom UPS fraudulently charged for the air

18  shipment in the first instance.  The Pass-Through Shippers or UPS Partners, who

19  had no knowledge of UPS's fraudulent Air-In-Ground program, then "passed on"

20  the fraudulent UPS charges to the Indirect Shippers.  The Pass-Through Shippers

21  and UPS Partners thus resold UPS air shipping services to the Indirect Shippers

22  who paid the fraudulent UPS charges.  For example, when a customer orders

23  products by air shipment from an online vendor such as Peet's Coffee & Tea, Inc.,

24  New Balance Athletic Shoe, Inc., Sephora USA, Inc., and Textbooks.com, the

25  online vendor has a contract with UPS that governs the shipment, but the vendor

26  passes on the UPS charges by including the shipping fees on the customer's

27  invoice.  Where the Pass-Through Shippers or UPS Partners recoup the full amount

28  of the fraudulent charges, they are not injured by the Air-In-Ground program.  The

Indirect Shippers, by contrast, are damaged as they would have been if they had contracted for the shipment directly with UPS.

140. Under these circumstances, the shipping contract between the Pass-Through Shipper or UPS Partner and UPS is intended to benefit the Indirect Shipper for whom UPS delivered packages. That is, the Indirect Shippers are the intended third-party beneficiaries of UPS's shipping contracts with the Pass-Through Shippers and UPS Partners. UPS specifically agreed to confer the benefit of the promised performance, namely air shipment, on the Indirect Shippers. In addition, the Pass-Through Shipper or UPS Partner intended to provide the benefit of UPS air shipment to the Indirect Shipper, its customer.

141. Because the Indirect Shippers were intended third-party beneficiaries of UPS's contracts with Pass-Through Shippers or UPS Partners, the Indirect Shippers have standing to assert claims for breach of those contracts against UPS.

142. The "In-Store Shipper" subclass consists of Class members who access UPS shipping services through the UPS store or through affiliates such as the Retail Franchises, UPS Alliance Locations, UPS Partners, and the Additional Shipping Outlets. These Class members filled out a Shipping Document to select the appropriate shipping service, but did not have the Website Terms referenced in their Shipping Documents and did not have access to the UPS Website Terms at the time of shipment. For members of this subclass, the Shipping Document makes up the entire contract between the shipper and UPS.

143. Excluded from the Class are: (a) UPS and any entity in which UPS has a controlling interest, and its legal representatives, officers, directors, assignees, and/or successors; (b) any federal or state government or entity; and (c) any judge to whom this case is assigned, together with any relative of such judge within the third degree of relationship, and the spouse of any such person.

144. **Numerosity** – The Class is composed of thousands of persons and entities throughout the United States. The joinder of such persons and entities in

1   one action is impracticable.  The members of the Class are ascertainable and

2   identifiable (from UPS's own internal records) and the Class is manageable.  The

3   Class members may be reasonably determined through discovery from the records

4   of UPS.

5       **145.   Common Factual and Legal Issues** – There are questions of law and

6   fact common to the Class.  The common legal and factual issues include, but are not

7   limited to, the following: (a) whether UPS has engaged in a pattern of racketeering

8   activity in connection with the diversion of air shipments to ground transportation;

9   (b) whether UPS has committed wrongful acts of wire fraud and mail fraud in

10  furtherance of its racketeering activity; (c) whether UPS has breached contracts

11  with Plaintiffs and the Class by charging for the air shipment level of service for

12  packages shipped by ground service; (d) whether UPS has breached contracts by

13  charging Plaintiffs and the Class for surcharges for aviation fuel for air packages

14  shipped by ground service; (e) whether UPS has made false and misleading

15  statements with the intent to defraud, deceive, and induce Plaintiffs and the Class;

16  (f) whether UPS has fraudulently failed to disclose that it was substituting ground

17  service for customers' purchased air services; (g) whether UPS has breached the

18  implied covenant of good faith and fair dealing by substituting ground

19  transportation for packages for which Plaintiffs and the Class had purchased air

20  shipping service and by charging surcharges for aviation fuel for "grounded out" air

21  shipments; (h) whether UPS has been unjustly enriched as a result of its practice of

22  substituting ground service for air service; and (i) whether Plaintiffs and the Class

23  are entitled to relief, including but not limited to, actual damages, treble damages,

24  punitive damages, and attorneys' fees.

25      **146.   Typicality of Plaintiffs** – Plaintiffs' claims are typical of the claims of

26  the Class because all such claims arise out of the common wrongful conduct of

27  UPS's substituting ground service for purchased air shipment while charging the

28  customer for air shipment and improperly assessing surcharges for aviation fuel.

147.   **Adequacy of Representation** – Plaintiffs and their attorneys will fairly and adequately protect the interests of the Class.  Plaintiffs have no interest antagonistic to the Class.  Plaintiffs have retained Class counsel experienced in the prosecution of complex litigation, including complex class actions, and such counsel will fully, fairly, and adequately represent Plaintiffs and the Class.

148.   **Predominance and Superiority** – This class action is appropriate for certification under F.R.C.P. 23(b)(3) because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class members is impracticable.  Should individual Class members be required to bring separate actions, this Court and courts throughout the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action is fully manageable and will provide unitary adjudication, economies of scale, and comprehensive supervision by a single Court.

## IX.   THE DISCOVERY RULE

149.   The "discovery" rule is applicable to Plaintiffs' California breach of contract claims and RICO claims (as well as Plaintiffs' other claims).  For breach of contract purposes, the "discovery" rule is a principle of California law which is integral to the accrual of a breach of contract action and the enforcement of contractual undertakings.  The "discovery" rule is applicable to both statutory and contractual periods of limitation.  The "discovery" rule is not an enhancement or enlargement of UPS's contractual undertaking, but rather "triggers" the accrual of liability.  Moreover, for the reasons alleged herein, Plaintiffs and putative class members could not have discovered and, therefore, could not have asserted their

claims or given notice to UPS within 180 days.  Any such notice is excused as a matter of standard contract interpretation.  A party cannot give notice of a wrong which it cannot discover and which is concealed by the other party.

## X.   TOLLING OF APPLICABLE STATUTES OF LIMITATIONS AND ESTOPPEL

150.   UPS had and continues to have superior knowledge to Plaintiffs and the Class regarding its practice of substituting ground service for air shipments and improperly assessing surcharges for aviation fuel for air shipments provided only ground transportation.  UPS concealed this practice and the fraudulent air shipment charges and fraudulent surcharges for aviation fuel.  Plaintiffs and the Class were affirmatively misled by UPS's knowing and active concealment and would have acted differently but for such concealment – i.e., Plaintiffs and the Class would not knowingly pay two or three times as much for a (fake) air shipment if it is going to be shipped (in actuality) by ground.

151.   As a result of UPS's concealment, no cause of action accrued to Plaintiffs and no applicable statute of limitations began to run until Plaintiffs' recent discovery of the fraudulent practice of substituting ground service for air service and improperly assessing surcharges for aviation fuel.  Plaintiffs had no basis or reason to suspect that UPS was charging for services that UPS never rendered.  Plaintiffs had no ability to protect their rights prior to such discovery.

152.   Any notice or limitations periods have been tolled by UPS's knowing and active concealment and intentionally misleading actions with respect to the fraudulent practice of substituting ground service for air service and improperly assessing surcharges for aviation fuel.  UPS has concealed from Plaintiffs and the Class vital information essential to the discovery and pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs or the Class. Plaintiffs and the Class could not reasonably have discovered this information at any time sooner.

**153.**   UPS's active concealment includes but is not limited to the following: (a) falsely stating on the invoices or billings that the package was delivered by air when, in fact, the package was delivered by ground; (b) placing air shipment labels on packages which were actually delivered by ground; and (c) concealing UPS's knowing diversion of air packages to ground shipment on the computerized tracking system which UPS makes available to shippers.  The computer tracking system specifically identifies the purchased level of service (air shipment) (and including, in some cases, surcharges for aviation fuel), but does not disclose that the shipment was actually shipped by ground service.

**154.**   UPS is also equitably estopped from relying on any purported notice of claim requirements, pleading requirements, or shortened contractual or applicable statutory limitations periods in defense of this action.  The causes of action alleged herein have not and will not properly accrue until full and complete disclosure of the fraudulent practices of substituting ground service for air service (the Air-In-Ground program) while still contracting and billing for air shipment and improperly assessing surcharges for aviation fuel.

## COUNT I

### RICO CLAIM ON BEHALF OF PLAINTIFF ARAPAHOE HYUNDAI WITH REGARD TO FUEL SURCHARGE CLAIMS

**155.**   Plaintiff Arapahoe, individually and on behalf of the putative Class, restates and incorporates herein, the preceding paragraphs of the Complaint.  In this Count, Plaintiff Arapahoe seeks damages related to Plaintiffs' Fuel Surcharge Claims.

**156.**   UPS committed the acts described in Appendix A and throughout this Complaint in furtherance of the Air-In-Ground scheme.  Upon information and belief, in furtherance of the Air-In-Ground scheme, UPS sent Unishippers false and fraudulent invoices as described in Appendix A, through the U.S. Mails in violation of 18 U.S.C. § 1341 and/or via the internet or email in violation of 18 U.S.C. §

1343.  Upon information and belief, Unishippers paid UPS for all of the Arapahoe shipments set forth herein.  Arapahoe Hyundai paid Unishippers for all of the Arapahoe shipments set forth herein.

157.  Plaintiff Arapahoe Hyundai was the direct and intended third-party beneficiary of the contract between Unishippers and UPS for the shipments described in Appendix A and throughout this Complaint.  UPS had actual knowledge that Arapahoe Hyundai was the direct and intended beneficiary based upon UPS's own shipping documents.

158.  UPS had actual knowledge that many shippers, such as Unishippers, "passed on" UPS shipping charges to customers such as Plaintiff Arapahoe Hyundai.

159.  UPS's fraudulent scheme known as the Air-In-Ground program is intended to sell and collect payment for air shipments while substituting ground transportation.  UPS's Air-In-Ground program constitutes a scheme or artifice to defraud, or obtain money by means of false or fraudulent pretenses, representations, or promises.

160.  Because of UPS's knowing and active concealment, and misleading actions and misrepresentations relating to the Air-In-Ground program, Plaintiffs and the Class could not have reasonably discovered UPS's fraudulent diversion of air shipments to ground transportation or UPS's wrongful application of surcharges for aviation fuel.

161.  As part of UPS's Air-In-Ground scheme, UPS imposed surcharges for aviation fuel on shipments transported solely by ground.

162.  UPS's deceptive practice of imposing these surcharges for aviation fuel while hiding its diversion of Class members' packages to ground transportation violates established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

163.  Plaintiffs and the Class have been damaged as a direct and proximate

result of UPS's participation in the enterprise in the amount of billions of dollars. Damages incurred by Plaintiffs and the Class include money paid as a result of UPS's fraudulent surcharges for aviation fuel.

## COUNT II

## RICO CLAIM ON BEHALF OF PLAINTIFF ARAPAHOE HYUNDAI WITH REGARD TO AIR SERVICE CLAIMS

164. Plaintiff Arapahoe, individually and on behalf of the putative Class, restates and incorporates herein, the preceding paragraphs of the Complaint. In this Count, Plaintiff Arapahoe seeks damages for Air Service Claims.

165. UPS committed the acts described in Appendix A and throughout this Complaint in furtherance of the Air-In-Ground scheme. Upon information and belief, in furtherance of the Air-In-Ground scheme, UPS sent Unishippers false and fraudulent invoices as described in Appendix A through the U.S. Mails in violation of 18 U.S.C. § 1341 and/or via the internet or email in violation of 18 U.S.C. § 1343. Upon information and belief, Unishippers paid UPS for all of the Arapahoe shipments set forth herein. Arapahoe Hyundai paid Unishippers for all of the Arapahoe shipments set forth herein.

166. Plaintiff Arapahoe Hyundai was the direct and intended third-party beneficiary of the contract between Unishippers and UPS for the shipments described in Appendix A and throughout this Complaint. UPS had actual knowledge that Arapahoe Hyundai was the direct and intended beneficiary based upon UPS's own shipping documents.

167. UPS had actual knowledge that many shippers, such as Unishippers, "passed on" UPS shipping charges to customers such as Plaintiff Arapahoe Hyundai.

168. UPS's fraudulent scheme known as the Air-In-Ground program is intended to sell and collect payment for air shipments while substituting ground transportation. UPS's Air-In-Ground program constitutes a scheme or artifice to

defraud, or obtain money by means of false or fraudulent pretenses, representations, or promises.

169.  Because of UPS's knowing and active concealment, and misleading actions and misrepresentations relating to the Air-In-Ground program, Plaintiffs and the Class could not have reasonably discovered UPS's fraudulent diversion of air shipments to ground transportation.

170.  Plaintiffs and the Class have been damaged as a direct and proximate result of UPS's participation in the enterprise in the amount of billions of dollars. Damages incurred by Plaintiffs and the Class include money paid as a result of UPS's fraudulent bills and charges for air shipments sent by ground.

## COUNT III

### RICO CLAIM ON BEHALF OF PLAINTIFFS DESIGNER, POCINO AND OWENS WITH REGARD TO FUEL SURCHARGE CLAIMS

171.  Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

172.  In this Count, Plaintiffs Designer, Pocino and Owens seek damages for Plaintiffs' Fuel Surcharge Claims.  UPS committed the acts described in Appendix A and throughout this Complaint in furtherance of the Air-In-Ground scheme. Upon information and belief, in furtherance of the Air-In-Ground scheme, UPS sent these Plaintiffs false and fraudulent invoices as described in Appendix A through the U.S. Mails in violation of 18 U.S.C. § 1341 and/or via the internet or email in violation of 18 U.S.C. § 1343.  Plaintiffs Designer, Pocino, and Owens paid the UPS Invoices referenced in said paragraphs.

173.  UPS's fraudulent scheme known as the Air-In-Ground program is intended to sell and collect payment for air level of service while substituting ground service.  UPS's Air-In-Ground program constitutes a scheme or artifice to defraud, or obtain money by means of false or fraudulent pretenses, representations, or promises.

**174.**   UPS's predicate offenses with respect to Plaintiffs Pocino, Designer Imports and Owens are directly "related" to the activities of the enterprise; they are the identical racketeering activities that UPS conducted through the enterprise: mail and wire fraud designed to conceal UPS's "Air-In-Ground" program and permit UPS to continue reaping hundreds of millions of dollars in fraudulent profits.

**175.**   Each of the acts of mail and wire fraud that injured the Plaintiffs were part of the same "pattern" of racketeering activity comprising the fraudulent "Air-In-Ground" program.  These acts had and have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated.  To conduct the fraudulent "Air-In-Ground" scheme, UPS needed to carry out the scheme through its shipping network including shipments for which shippers directly contract with UPS.

**176.**   It was necessary for UPS to commit the same predicate acts of mail fraud and wire fraud with respect to Plaintiffs Designer, Pocino, and Owens to conceal UPS's fraudulent scheme.  These predicate acts are related to activities of the enterprise (association-in-fact), because they enabled the activities of the enterprise by concealing the fraud.

**177.**   UPS could not have carried out its Air-In-Ground program without conducting the same fraudulent activities through all branches of its shipping network (the association-in-fact enterprise).  Otherwise UPS's fraudulent scheme would have been exposed.  UPS had to effect its scheme to defraud and commit the same predicate acts of mail fraud and wire fraud (fraudulent and misleading Invoices) on customers such as Plaintiffs Designer, Pocino, and Owens.  Otherwise, the Air-In-Ground program would have been discovered.

**178.**   The predicate offenses in issue including Plaintiffs Owens, Designer, and Pocino are directly and inextricably related to the actions of the UPS RICO enterprise.

**179.**   UPS was enabled to commit the predicate offenses against Plaintiffs

Owens, Designer, and Pocino by virtue of UPS's position in the enterprise or its conduct in or control over the affairs of the enterprise.  The predicate acts in issue are interdependent or interrelated.

180.   Because of UPS's knowing and active concealment, and misleading actions and misrepresentations relating to the Air-In-Ground program, Plaintiffs and the Class could not have reasonably discovered UPS's fraudulent diversion of air shipments to ground transportation or UPS's wrongful imposition of surcharges for aviation fuel.

181.   Plaintiffs and the Class have been damaged as a direct and proximate result of UPS's participation in the enterprise in the amount of hundreds of millions of dollars.  Damages incurred by Plaintiffs and the Class include money paid as a result of UPS's fraudulent surcharges for aviation fuel.

## COUNT IV

### RICO CLAIM ON BEHALF OF PLAINTIFFS DESIGNER, POCINO AND OWENS WITH REGARD TO AIR SERVICE CLAIMS

182.   Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

183.   In this Count, Plaintiffs Designer, Pocino and Owens seek damages for both Air Service Claims.  UPS committed the acts described in Appendix A and throughout this Complaint in furtherance of the Air-In-Ground scheme.  Upon information and belief, in furtherance of the Air-In-Ground scheme, UPS sent these Plaintiffs false and fraudulent invoices as described in Appendix A through the U.S. Mails in violation of 18 U.S.C. § 1341 and/or via the internet or email in violation of 18 U.S.C. § 1343.  Plaintiffs Designer, Pocino, and Owens paid the UPS Invoices referenced in said paragraphs.

184.   UPS's fraudulent scheme known as the Air-In-Ground program is intended to sell and collect payment for air level of service while substituting ground service.  UPS's Air-In-Ground program constitutes a scheme or artifice to

defraud, or obtain money by means of false or fraudulent pretenses, representations, or promises.

185.   UPS's predicate offenses with respect to Plaintiffs Pocino, Designer Imports and Owens are directly "related" to the activities of the enterprise; they are the identical racketeering activities that UPS conducted through the enterprise: mail and wire fraud designed to conceal UPS's "Air-In-Ground" program and permit UPS to continue reaping hundreds of millions of dollars in fraudulent profits.

186.   Each of the acts of mail and wire fraud that injured the Plaintiffs were part of the same "pattern" of racketeering activity comprising the fraudulent "Air-In-Ground" program.  These acts had and have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated.  To conduct the fraudulent "Air-In-Ground" scheme, UPS needed to carry out the scheme through its shipping network including shipments for which shippers directly contract with UPS.

187.   It was necessary for UPS to commit the same predicate acts of mail fraud and wire fraud with respect to Plaintiffs Designer, Pocino, and Owens to conceal UPS's fraudulent scheme.  These predicate acts are related to activities of the enterprise (association-in-fact), because they enabled the activities of the enterprise by concealing the fraud.

188.   UPS could not have carried out its Air-In-Ground program without conducting the same fraudulent activities through all branches of its shipping network (the association-in-fact enterprise).  Otherwise UPS's fraudulent scheme would have been exposed.  UPS had to effect its scheme to defraud and commit the same predicate acts of mail fraud and wire fraud (fraudulent and misleading Invoices) on customers such as Plaintiffs Designer, Pocino, and Owens.  Otherwise, the Air-In-Ground program would have been discovered.

189.   The predicate offenses in issue including Plaintiffs Owens, Designer, and Pocino are directly and inextricably related to the actions of the UPS RICO

51.

enterprise.

190.   UPS was enabled to commit the predicate offenses against Plaintiffs Owens, Designer, and Pocino by virtue of UPS's position in the enterprise or its conduct in or control over the affairs of the enterprise.  The predicate acts in issue are interdependent or interrelated.

191.   Because of UPS's knowing and active concealment, and misleading actions and misrepresentations relating to the Air-In-Ground program, Plaintiffs and the Class could not have reasonably discovered UPS's fraudulent diversion of air shipments to ground transportation or UPS's wrongful imposition of surcharges for aviation fuel.

192.   Plaintiffs and the Class have been damaged as a direct and proximate result of UPS's participation in the enterprise in the amount of hundreds of millions of dollars.  Damages incurred by Plaintiffs and the Class include money paid as a result of UPS's fraudulent bills and charges for air shipments sent by ground.

## COUNT V

## RICO CONSPIRACY CLAIM

193.   Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

194.   This Count, which alleges violations of RICO as provided in 18 U.S.C. § 1962(d), is asserted against Defendant UPS and Defendants DOES on behalf of Plaintiffs and the Class.

195.   Plaintiffs, the Class, UPS and Defendants DOES are "persons" as that term is defined by 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding a legal or beneficial interest in property.

196.   Parent UPS, the UPS subsidiaries, and Defendants DOES conspired to violate 18 U.S.C. § 1962(c) by conducting and participating in the affairs of an association-in-fact enterprise through their pattern of racketeering activity in furtherance of the Air-In-Ground scheme.

197.   Parent UPS, the UPS subsidiaries, and Defendants DOES agreed to participate in the association-in-fact enterprise described in this Complaint, and to conduct and participate in that enterprise's affairs through the pattern of racketeering activity described in Appendix A and throughout this Complaint.

198.   Plaintiffs and the Class have been damaged in the amount of billions of dollars as a direct and proximate result of Defendants conspiring to violate 18 U.S.C. § 1962(c).  Damages incurred by Plaintiffs and the Class include money paid as a result of UPS's fraudulent bills and charges for air shipments sent by ground and for fraudulent surcharges for aviation fuel.

## COUNT VI

### BREACH OF CONTRACT AS TO PRE-2009 SURCHARGES FOR AVIATION FUEL

199.   Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

200.   Nothing in UPS's Pre-2009 Fuel Surcharge Clause provided any notice to Plaintiffs and Class members regarding UPS's scheme to charge surcharges for aviation fuel to Plaintiffs and Class members for packages only provided ground service.  The Pre-2009 Fuel Surcharge Clause does not in any respect base the applicable fuel surcharge on the service selected by the shipper regardless of mode of transportation.  The Pre-2009 Fuel Surcharge Clause and related materials regarding fuel surcharges at UPS.com simply describe the surcharge for aviation fuel and ground surcharge as separate and distinct charges.

201.   Rather, since the fuel surcharge purported to reimburse UPS for the cost of fuel expended in air transportation, Plaintiffs and Class members reasonably believed that UPS's diesel fuel surcharge applied to ground service packages, while UPS's surcharge for aviation fuel applied to "air" level of service.

202.   The Pre-2009 Fuel Surcharge Clause does not authorize UPS to assess a surcharge for aviation fuel for ground delivery.  The only reasonable interpretation of the Pre-2009 Fuel Surcharge Clause is that UPS will assess

surcharges for aviation fuel for air services <u>actually provided</u> and not for ground service.

203.   UPS materially breached its contracts for air shipment with Plaintiffs and the Class by assessing surcharges for aviation fuel for packages delivered by ground service.

204.   Conditions precedent to the commencement of this action, if any, have been performed, waived, or excused.

205.   Plaintiffs and the Class are excused from complying with any terms of any contracts regarding purported notice, pleading, or other claim filing requirements and/or limitations, and UPS is barred from enforcing any such requirements or limitations based upon UPS's fraudulent concealment and the doctrines of equitable estoppel and unconscionability.  Performance by Plaintiffs and the Class is excused by UPS's material breaches.

206.   Plaintiffs and the Class have sustained substantial economic loss and damages as a direct and proximate result of UPS's breaches of the contracts.

207.   UPS is liable to Plaintiffs and the Class for the difference in price between the surcharges for aviation fuel and the surcharges for diesel fuel.

## COUNT VII

### BREACH OF CONTRACT AS TO POST-2009 SURCHARGES FOR AVIATION FUEL

208.   Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

209.   The purposeful assessment of an inapplicable surcharge for aviation fuel to ground-delivered packages is part of UPS's concerted effort to perpetuate and hide the Air-In-Ground scheme.  The surcharge for aviation fuel also is a means to obtain additional, unwarranted profits at the expense of Plaintiffs and the Class.

210.   On the current UPS Website, there is a link for "Fuel Surcharge." There is no language in this description of UPS's fuel surcharge that purports to provide notice to customers regarding UPS's scheme to charge surcharges for

aviation fuel to Plaintiffs and Class members for packages shipped by ground service.

**211.**   No reasonable shipper would have reason to look beyond the portion of the UPS website that is specifically highlighted "Fuel Surcharge" to the more generic link to "UPS Tariff / Terms and Conditions of Service."

**212.**   In the Post-2009 Fuel Surcharge Clause, UPS <u>first</u> purported to link the fuel surcharge to the level of service provided regardless of actual mode of transportation.  Thus, January 2009 is the first time that UPS attempted to base both Level of Service Charges and surcharges for aviation fuel on the service selected by the UPS customer, regardless of whether UPS actually provided that service or secretly substituted ground delivery.  In addition, even after January 2009, the UPS website information substantially "tracks" the Pre-2009 Fuel Surcharge Clause and thus conflicts with the current Fuel Surcharge Clause.  Nothing in the website language relates specifically to "fuel surcharges" alerts the shipper to check the Website Terms for different information.  It is reasonable that a customer would rely upon the specific fuel surcharge information on the website and not search the Website Terms.

**213.**   Additionally, the Post-2009 Fuel Surcharge Clause contains the same ambiguities and internal contradictions arising from the "mode of transportation" language of Section 36.  Even for shipments made after January 5, 2009, no reasonable customer would expect to pay a premium for jet fuel that UPS knows in advance it will never use.  Thus, nothing in the UPS Website Terms permits UPS to impose a surcharge based on aviation fuel for packages that use no aviation fuel whatsoever.

**214.**   Rather, since the fuel surcharge purported to reimburse UPS for the cost of fuel expended in air transportation, Plaintiffs and Class members reasonably believed that UPS's diesel fuel surcharge applied to ground service packages, while UPS's surcharges for aviation fuel applied to "air" levels of service.

SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT - MDL NO. 2153;
CASE NO. 2:10-ML-02153-GW-PJW

215.    UPS materially breached its contracts for air shipment with Plaintiffs and the Class by assessing surcharges for aviation fuel for packages delivered by ground service.

216.    Conditions precedent to the commencement of this action, if any, have been performed, waived, or excused.

217.    Plaintiffs and the Class are excused from complying with any terms of any contracts regarding purported notice, pleading, or other claim filing requirements and/or limitations, and UPS is barred from enforcing any such requirements or limitations based upon UPS's fraudulent concealment and the doctrines of equitable estoppel and unconscionability.  Performance by Plaintiffs and the Class is excused by UPS's material breaches.

218.    Plaintiffs and the Class have sustained substantial economic loss and damages as a direct and proximate result of UPS's breaches of the contracts.

219.    UPS is liable to Plaintiffs and the Class for the difference in price between the surcharge for aviation fuel and the surcharge for diesel fuel on each "grounded-out" shipment.

## COUNT VIII

### BREACH OF CONTRACT AS TO AIR SERVICE CLAIMS

220.    Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

221.    Plaintiffs also allege as to this Cause of Action these additional facts:

222.    A fundamental, bedrock principle of contract law is that the Court must give effect to the reasonable expectations of the parties.  UPS cannot reasonably deny that a shipper who selects an "air" level of service and is billed the much higher price for that level of service reasonably expects that UPS has actually provided "air" service.  That expectation is certainly reasonable where UPS advises that "from the array of services" in the Guide, the shipper should "determine the service that best meets your needs."  The expectation is also reasonable where UPS

1   represents that "air" service has been provided in the Subsequent Shipping

2   Documents, and the shipper pays for the service selected on the original Shipping

3   Document based upon the Invoice reflecting that service.

4       223.   UPS ignores the fact it has predetermined those instances in which

5   "air" service will never be available; that, in many instances, "air" service is

6   unnecessary to obtain the specified delivery time; and that, had the shipper selected

7   ground service, the package would arrive at the same time in many instances which

8   are concealed by UPS in the Guide and otherwise.

9       224.   The original Shipping Document, which is what the shipper uses to

10  initiate each individual contract, makes no reference to substituting mode of

11  transportation or charging surcharges for aviation fuel for ground deliveries.  This

12  Document provides no reasonable notice to the shipper of the Air-In-Ground

13  program or UPS's predetermined plan to bill and collect for "air" level of service it

14  never provides and to charge surcharges for aviation fuel for ground delivery.

15      225.   The Invoices (and "tracking" and "proof of delivery" reports) cannot

16  reasonably be separated from the original Shipping Document, the Tariff and the

17  Guide.  They are an integral part of the UPS scheme to defraud.

18      226.   The Subsequent Shipping Documents do not in any respect reference

19  the service "selected" by the shipper.  These documents all identify the "service" as

20  "air."  The only reasonable interpretation of these Documents is that UPS has

21  actually provided the "air" level of service.

22      227.   Section 36 cannot be viewed in the abstract.  It does not authorize UPS

23  to "offer" specified "air" levels of service which UPS knows in advance it will not

24  provide.  It does not authorize UPS to conceal all shipments for which UPS has

25  substituted ground transportation.  It does not authorize UPS to falsely represent

26  that only "air" service is available for letter shipments.  It does not authorize UPS to

27  conceal that much cheaper ground delivery will arrive in many instances at the

28  desired delivery time.  It does not authorize UPS to misrepresent on the Subsequent

SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT - MDL NO. 2153;
CASE NO. 2:10-ML-02153-GW-PJW

Shipping Documents the service that UPS has actually provided.

228.   The Air-In-Ground scheme could not withstand the light of day.  No reasonable shipper would pay a much higher price for the "air" level of service if the shipper knew that the package would be shipped by ground or that the "air" level of service was unnecessary to obtain the desired delivery time.

229.   Plaintiffs and the Class entered into contracts with UPS whereby UPS agreed to ship packages for Plaintiffs and the Class based upon a pre-determined rate and Plaintiffs' selected level of service (e.g., Next Day Air or 2nd Day Air).

230.   The contracts in issue are adhesion contracts.

231.   The physical characteristics of the original Shipping Document do not provide UPS's customers, including Plaintiffs and the Class, reasonable notice of the existence of important terms and conditions.  UPS does not reasonably advise UPS's customers, including Plaintiffs and the Class, of the terms of the Air-In-Ground program.

232.   When Plaintiffs entered into the contracts with UPS, Plaintiffs had before them only the original Shipping Document.  On that form, Plaintiffs selected the level of service desired (e.g., Next Day Air or 2nd Day Air).

233.   Plaintiffs reasonably believed that by selecting, for example, "Next Day Air" service, they were purchasing "air shipment with delivery the following day."  This is the plain meaning of the name of the service Plaintiffs and the Class purchased.  Likewise, Plaintiffs and the Class reasonably believed that by selecting "2nd Day Air" service, they were purchasing "air shipment with delivery in two days."

234.   On information and belief, UPS understood that Plaintiffs and Class members believed they would receive air service, as indicated by the plain meaning of the selected Next Day Air or 2nd Day Air service.

235.   Plaintiffs and the Class attached to the terms Next Day Air, 2nd Day Air, and "service selected by the shipper" the plain meaning of the words used, and

58.

had no reason to know of any different meaning attached to these terms by UPS.
UPS had reason to believe that Plaintiffs and the Class would attribute the plain
meaning of the words used to those terms, and further encouraged Plaintiffs'
understanding by continuing to use the terms on all documents associated with the
shipments and by charging a fuel surcharge based on jet fuel.  Under basic
principles of contract interpretation, the meaning that Plaintiffs and the Class
attached to those terms controls.  *See, e.g.*, Restatement (Second) of Contracts §
201.  UPS, by its continued use of materials regarding "Next Day Air" or "2nd Day
Air" (including, but not limited to, Shipping Documents, advertisements, labels,
and Subsequent Shipping Documents), indicated to Plaintiffs that UPS was
providing air service.  (*See* Exhs. 1-29).

236.    The UPS Website Terms are available only at www.ups.com.  In-Store
Shippers did not have access to the UPS Website Terms at the time of shipment.
The Website Terms were, therefore, not adequately incorporated by referenced into
the shipping contracts between UPS and the In-Store Shipper subclass.

237.    There are direct contradictions, ambiguities, and false statements in the
Guide, the UPS website information, and the Subsequent Shipping Documents as
alleged herein.  In particular, the UPS statements that only "air" delivery and
statements regarding delivery times in the Guide are false and misleading.
Statements on the UPS Website regarding post-January 2009 fuel surcharges also
contradict the Post- 2009 Fuel Surcharge Clause.

238.    Even for those Class members who did have access to UPS's Website
Terms, in light of the Shipping Documents (example at Exhs. 1-2), the language in
those Terms purporting to permit UPS to "use any mode of transportation" to
"provide the service selected by the shipper" is ambiguous.

239.    Reasonable Class members selecting Next Day Air or 2nd Day Air
service on the Shipping Documents (Exhs. 1-2) and reviewing the language of
UPS's Website Terms (Exh. 30) would be confused by the apparent contradiction

in permitting UPS to use any "mode of transportation" while still requiring UPS to provide the "service selected by the shipper," because the plain meaning of "Next Day Air" service is "shipment by air, with delivery within the next day" and the plain meaning of "2nd Day Air" service is "shipment by air, with delivery within two days."

240.   Class members faced with this ambiguity would reasonably interpret the language of UPS's Website Terms to mean (1) that UPS could use any form of air shipment to provide the air service selected; and/or (2) that UPS could use, for example, a truck, train, or plane to provide a service such as UPS's "Three Day Select."  Reasonable Class members would not understand that UPS could charge them for air service and ship their packages by ground transportation.  Such an interpretation is not reasonable because, by doing so, UPS would no longer be providing the "service selected by the shipper," and would instead be providing an entirely different (and less expensive) service – the Ground service.

241.   This is particularly true for the many customers, including Plaintiffs and Class members, for whom the air service selected did not even provide any earlier time of delivery guarantee than the ground service the customers could have purchased for far less money.  Such customers would never reasonably interpret the clause concerning "mode of transportation" to authorize UPS to collect high premiums for, literally, no difference in service at all.  Such customers would, under one of the interpretations above, reasonably conclude that, despite the "mode of transport" clause in the UPS Website Terms, "air" would still mean "air."

242.   Plaintiffs reasonably expected that, pursuant to the Shipping Documents, UPS would provide the service Plaintiffs selected (Next Day Air or 2nd Day Air) by transporting Plaintiffs' packages by air shipment, with delivery within one or two days.

243.   Consistent with this expectation, Plaintiffs paid UPS for air shipment, including a surcharge for aviation fuel.

SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT - MDL NO. 2153;
CASE NO. 2:10-ML-02153-GW-PJW

**244.**   To implement the reasonable expectation of the Plaintiffs (and other shippers), the shipping contracts must be interpreted in favor of the shippers who did not reasonably know of UPS's purported intent regarding its Air service charges.

**245.**   Further, the Air-In-Ground program is inconsistent with and not justified by the "discretion" language in Section 36.  To the contrary, UPS is not exercising any discretion in any reasonable sense when it has predetermined on an "across the board" basis that the "air" level of service will never be available for packages subject to the Air-In-Ground program.  To the contrary, Plaintiffs allege that UPS has systematically and deliberately instituted its Air-In-Ground program in order to predetermine which shipments will be transported by ground, notwithstanding UPS's collection of Air service charges and surcharges for aviation fuel.

**246.**   Plaintiffs and the Class have performed all conditions required of them under the contracts by paying the agreed upon rate for air shipment of the packages and by paying the surcharges for aviation fuel.

**247.**   UPS has materially breached its contracts for air shipment with Plaintiffs and the Class, created by Plaintiffs and the Class selecting Next Day Air or 2nd Day Air service on the Shipping Documents and paying UPS for such service, by substituting ground transportation for packages for which Plaintiffs and Class members had contracted and paid for air shipping services.

**248.**   UPS has breached its contracts for air shipment with Plaintiffs and the Class by failing to exercise discretion regarding shipments for which UPS substitutes an alternative mode of transportation; instead, UPS has systematically and deliberately predetermined which shipments will be transported by ground, notwithstanding UPS's collection of Air service charges and surcharges for aviation fuel.

**249.**   Conditions precedent to the commencement of this action, if any, have

been performed, waived, or excused.

250.   Plaintiffs and the Class are excused from complying with any terms of any contracts regarding purported notice, pleading, or other claim filing requirements and/or limitations, and UPS is barred from enforcing any such requirements or limitations based upon UPS's fraudulent concealment and the doctrines of equitable estoppel and unconscionability.  Performance by Plaintiffs and the Class is excused by UPS's material breaches.

251.   Plaintiffs and the Class have sustained substantial economic loss and damages as a direct and proximate result of UPS's breaches of the contracts.

252.   UPS is liable to Plaintiffs and the Class for the difference in price between the air shipments purchased and the ground shipments provided.

## COUNT IX

### FRAUDULENT INDUCEMENT

253.   Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

254.   This Count, which alleges fraudulent inducement, is asserted against Defendant UPS on behalf of Plaintiffs and the Class.

255.   UPS falsely and fraudulently represented to Plaintiffs and the Class that they were purchasing and would receive "air" shipping services from UPS. UPS also fraudulently represented that "air" level of service was necessary to obtain desired delivery times.

256.   UPS falsely and fraudulently represented to Plaintiff and the Class that they were purchasing and would receive "air" shipping services from UPS.  UPS falsely and fraudulently concealed material facts and/or failed to disclose material facts UPS had a duty to disclose.

257.   UPS's representations were, in fact, false.  The true facts, as alleged above, were that UPS was intentionally and systematically rerouting packages for which Plaintiffs and the Class purchased UPS air shipping services from air

transportation to ground transportation and charging higher surcharges for aviation fuel for shipments that traveled only by ground.

258.   UPS also misrepresented that letters could be shipped only by Next Day Air or 2nd Day Air.

259.   When UPS made the representations to Plaintiffs and the Class, UPS knew them to be false, and UPS made the representations with the intent to defraud and deceive Plaintiffs and the Class.

260.   Plaintiffs and the Class, at the time these representations were made and at the time they entered into the agreement with UPS by purchasing UPS air shipping services, were ignorant of the falsity of UPS's representations and believed them to be true.  In reliance on UPS's representations, Plaintiffs and the Class were fraudulently induced to enter into air shipping contracts with UPS.

261.   Had Plaintiffs and the Class known the actual facts, they would not have entered into the contracts for UPS's air shipping services.

262.   Plaintiffs and the Class were justified in relying on UPS's representations due to the circumstances alleged above, including but not limited to UPS's practice of concealing the Air-In-Ground program and UPS's reputation as an honest corporation.  Plaintiffs and the Class had no reason to suspect that UPS intended to breach the shipping contract.

263.   As a direct and proximate result of UPS's misrepresentations and failure to disclose facts as alleged above, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

264.   The aforementioned conduct of UPS was willful and was intended to cause injury to Plaintiffs and the Class.  Plaintiffs and the Class are informed and believe, and based thereon allege, that instead of presenting the facts as UPS knew them to be, UPS engaged in a willful scheme to defraud Plaintiffs and the Class by concealing the fact that UPS was substituting far less costly ground transportation for the expensive "air" services purchased by Plaintiffs and the Class.  Plaintiffs

and the Class are therefore entitled to an award of exemplary or punitive damages.

## COUNT X

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND

### FAIR DEALING WITH RESPECT TO THE FUEL SURCHARGE CLAIM

265.   Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

266.   This Count, which alleges breach of the implied covenant of good faith and fair dealing with respect to UPS's surcharges for aviation fuel, is asserted against Defendant UPS on behalf of Plaintiffs and the Class.

267.   Plaintiffs and the Class entered into shipping contracts with UPS under which Plaintiffs and the Class purchased air shipping services from UPS.

268.   Plaintiffs and the Class performed all of their obligations pursuant to the shipping contracts by paying UPS's stated rates for air shipping services, including surcharges for aviation fuel.

269.   Implied in every contract is a covenant of good faith and fair dealing by each party not to do anything that will deprive the other parties thereto of the benefits of the contract. This covenant imposes on each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his or her own.  This covenant also imposes a duty on each contracting party to do everything that the contract presupposes that he or she will do to accomplish the contract's purpose.

270.   UPS breached the implied covenant of good faith and fair dealing in the contracts it entered into with Plaintiffs and the Class by charging surcharges for aviation fuel for "grounded-out" air shipments, as alleged herein.  Had the parties negotiated in advance whether UPS could charge Plaintiffs and the Class a surcharge for aviation fuel that UPS knew it would never use in shipping the packages of Plaintiffs and the Class, Plaintiffs and the Class would not have agreed to such terms.

271.   UPS, by imposing a surcharge for aviation fuel where no aviation fuel would be used to transport the packages of Plaintiffs and the Class, unfairly interfered with the rights of Plaintiffs and the Class to receive the benefits of the contract, by charging an amount purporting to compensate UPS for an expenditure UPS never made.

272.   UPS had no discretion to charge surcharges for aviation fuel for "grounded-out" air shipments.  To the extent UPS claims it had any such discretion, it abused that discretion and breached the implied covenant of good faith and fair dealing by systematically acting to defeat the benefits of the contracts with Plaintiffs and the Class.

273.   As a direct and proximate result of UPS's breach of the implied covenant of good faith and fair dealing, and the facts alleged herein, Plaintiffs and the Class have been damaged in an amount to be proved at trial.

## COUNT XI

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WITH RESPECT TO AIR SERVICE CLAIM

274.   Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

275.   This Count, which alleges breach of the implied covenant of good faith and fair dealing with respect to Air services, is asserted against Defendant UPS on behalf of Plaintiffs and the Class.

276.   Plaintiffs and the Class entered into shipping contracts with UPS under which Plaintiffs and the Class purchased air shipping services from UPS.

277.   Plaintiffs and the Class performed all of their obligations pursuant to the shipping contracts by paying UPS's stated rates for air shipping services, including surcharges for aviation fuel.  No condition precedent remained to UPS's obligation to ship the packages of Plaintiffs and the Class by air.

278.   Implied in every contract is a covenant of good faith and fair dealing

by each party not to do anything that will deprive the other parties thereto of the benefits of the contract. This covenant imposes on each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his or her own.  This covenant also imposes a duty on each contracting party to do everything that the contract presupposes that he or she will do to accomplish the contract's purpose.

279.   UPS breached the implied covenant of good faith and fair dealing in the contracts it entered into with Plaintiffs and the Class by substituting ground service for packages for which Plaintiffs and the Class had purchased air shipping services.  Had the parties negotiated in advance whether UPS could charge Plaintiffs and the Class for air shipping services and then, in fact, provide far less expensive ground services, Plaintiffs and the Class would not have agreed to such terms.

280.   UPS, by substituting ground service for air service through its Air-In-Ground program, unfairly interfered with the rights of Plaintiffs and the Class to receive the benefits of the contract, specifically air shipping.

281.   UPS had no discretion to ship packages in any way not contemplated by the air shipping service contracts with Plaintiffs and the Class.  To the extent UPS claims it had any such discretion, it abused that discretion and breached the implied covenant of good faith and fair dealing by systematically acting to defeat the benefits of the contracts with Plaintiffs and the Class.

282.   As a direct and proximate result of UPS's breach of the implied covenant of good faith and fair dealing, and the facts alleged herein, Plaintiffs and the Class have been damaged in an amount to be proved at trial.

## COUNT XII

### UNJUST ENRICHMENT WITH RESPECT TO FUEL SURCHARGE CLAIM

283.   Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

284.    This Count, which alleges unjust enrichment, is asserted against Defendant UPS on behalf of Plaintiffs and the Class.  Plaintiffs allege this Count in the alternative to Plaintiffs' claims for breach of contract under Counts VI-VII.

285.    As alleged herein, UPS imposed an improper and fraudulent surcharge for aviation fuel on shipments that UPS transported by ground, using no aviation fuel whatsoever, despite Plaintiffs' and the Class' purchase of air services.  UPS engaged in these actions wrongfully, without Plaintiffs' consent, and has done so to its advantage and benefit.  UPS has no entitlement to the higher surcharges for aviation fuel it charged for Plaintiffs' and the Class's ground shipments.

286.    As a direct and proximate result of UPS's conduct, UPS has been unlawfully and unjustly enriched in an amount to be proven at trial.

## COUNT XIII

### UNJUST ENRICHMENT WITH RESPECT TO AIR SERVICE CLAIM

287.    Plaintiffs, individually and on behalf of the putative Class, restate and incorporate herein the preceding paragraphs of the Complaint.

288.    This Count, which alleges unjust enrichment, is asserted against Defendant UPS on behalf of Plaintiffs and the Class.  Plaintiffs allege this Count in the alternative to Plaintiffs' claims for breach of contract under Count VIII.

289.    As alleged herein, UPS engaged in the Air-In-Ground program in which it fraudulently substituted the less expensive ground shipping service despite the fact that Plaintiffs and the Class had purchased more expensive air shipping services.  UPS engaged in these actions wrongfully, without Plaintiffs' consent, and has done so to its advantage and benefit.  UPS has no entitlement to the higher air service fees it charged for Plaintiffs' and the Class's ground shipments.

290.    As a direct and proximate result of UPS's conduct, UPS has been unlawfully and unjustly enriched in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class respectfully request that the Court

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - MDL NO. 2153; CASE NO. 2:10-ML-02153-GW-PJW

enter judgment against Defendant UPS and Defendants DOES as follows:

    **a.**    Certify the proposed Class under F.R.C.P. 23(a) and 23(b);

    **b.**    Award actual and compensatory damages;

    **c.**    Award treble damages pursuant to 18 U.S.C. § 1964(c);

    **d.**    Order preliminary and permanent injunctive relief enjoining UPS, its partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with it directly or indirectly, or in any manner, from in any way engaging in the practices set forth herein;

    **e.**    Award appropriate attorneys' fees, pursuant to 18 U.S.C. § 1964 and other applicable statutes;

    **f.**    Award costs of suit incurred herein;

    **g.**    Award punitive damages, to be awarded to Plaintiffs and each Class member;

    **h.**    Award both pre- and post-judgment interest on any amounts awarded;

    **i.**    Order an imposition of a constructive trust upon all monies and assets Defendants have acquired as a result of their unfair practices;

    **j.**    Order such other and further relief as the Court deems just and proper under the circumstances.

## Jury Trial Demanded

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated:  October 19, 2010

                        /s/ Peter J. McNulty
                      Peter J. McNulty        SBN 89660
                      MCNULTY LAW FIRM
                      827 Moraga Dr.
                      Los Angeles, CA 90049
                      Telephone: (310) 471-2707

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - MDL NO. 2153; CASE NO. 2:10-ML-02153-GW-PJW

FAX: (310) 472-7014
Email: peter@mcnultylaw.com
Attorney for Plaintiffs

Matthew J. Geragos        SBN 153390
GERAGOS LAW GROUP
150 S. Los Robles Ave., Ste. 665
Pasadena, CA 91101
Telephone: (626) 449-8700
FAX: (626) 449-8702
Email: matthew@geragoslaw.com
Attorney for Plaintiffs

Stephen C. Neal           SBN 170085
Scott D. Devereaux        SBN 146050
Kathleen H. Goodhart      SBN 165659
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5152
FAX: (650) 857-0663
Email: nealsc@cooley.com
Email: devereauxsd@cooley.com
Email: kgoodhart@cooley.com
Attorneys for Plaintiffs

Kirk D. Tresemer  Colorado Bar #8502
Darren A. Natvig  Colorado Bar #35491
IRWIN & BOESEN, P.C.
4100 E. Mississippi Ave., Ste. 1900
Denver, CO 80246
Telephone: (303) 999-9999
FAX: (303) 320-1915
Email: ktresemer@coloradolawyers.com
Email: dnatvig@coloradolawyers.com
Attorneys for Plaintiffs

Paul R. Alanis            SBN 56423
Loren S. Ostrow          SBN 77665
150 S. Los Robles Ave., Suite 665
Pasadena, CA 91101
Telephone: (626) 356-1188
FAX: (626) 345-1164
Email: palanis@a-olaw.com
Email: lostrow@a-olaw.com
Attorneys for Plaintiffs

Jonathan H. Waller        Alabama Bar # 0725-L53J
G. Douglas Jones   Alabama Bar # 3880-S82G

69.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kirk D. Smith   Alabama Bar # 6682-S76K
HASKELL SLAUGHTER YOUNG &
REDIKER, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
Telephone: (205) 834-9897
FAX: (205) 324-1133
Email: jhw@hsy.com
Email: gdj@hsy.com
Email: kds@hsy.com
Attorneys for Plaintiffs

1197222 v1/SF

70.